**UNITED STATES of America, Appellee,**

v.

**Lorenzo Raphael HERNANDEZ and Ana Hernandez, Defendants-Appellants.**

**Nos. 683, 744, Dockets 83–1301, 83–1306.**

United States Court of Appeals, Second Circuit.

Argued Jan. 24, 1984.

Decided March 23, 1984.

---

896

Thomas E. Engel, New York City, for defendant-appellant Ana Hernandez.

Barry Bassis, New York City (The Legal Aid Society, Federal Defender Services Unit, New York City, of counsel), for defendant-appellant Lorenzo Raphael Hernandez.

David S. Hammer, Asst. U.S. Atty., S.D. N.Y., New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Roanne L. Mann, Asst. U.S. Atty., New York City, of counsel), for appellee.

Before MESKILL, NEWMAN, and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Lorenzo Hernandez appeals from a judgment of the United States District Court for the Southern District of New York, entered after a jury trial before Leonard B. Sand, *Judge*, convicting him of all counts of a nine-count indictment charging him with conspiracy under 18 U.S.C. § 371 (1982) to violate 18 U.S.C. §§ 495, 641, and 1708 (count one), forgery of treasury checks in

violation of 18 U.S.C. § 495 (counts two and three), receipt of stolen treasury checks in violation of 18 U.S.C. § 641 (count four), possession of stolen mail in violation of 18 U.S.C. § 1708 (counts five, six and seven), obstruction of justice in violation of 18 U.S.C. § 1503 (count eight), and threatening a witness in violation of 18 U.S.C. § 1512 (count nine). Although Lorenzo appealed from the entire judgment, the only argument he advances on appeal is that his conviction on count eight, obstruction of justice, was improper because his conduct in threatening a witness is no longer proscribed by § 1503. We agree and reverse as to count eight, but affirm Lorenzo's convictions on the other counts.

Codefendant Ana Hernandez appeals from the only count on which she was convicted, count two, which charged her with forging government checks. Finding no merit in her arguments, addressed primarily to the court's charge on intent, we affirm her conviction.

## I. BACKGROUND

During a two and one-half year period beginning in November 1980, Lorenzo, while operating a grocery store in New York City, turned over to various wholesalers approximately 200 government checks bearing forged endorsements of the names of the true payees and second endorsements either signed by Lorenzo, himself, or stamped with his supermarket's stamp. On eight of these checks the payee endorsements were forged by his wife, Ana.

When the wholesalers' banks learned that some of these checks had been stolen, they returned them to the wholesalers who, in turn, demanded reimbursement from Lorenzo. At first, Lorenzo was able to reimburse them, but the volume of returned checks became so great that many wholesalers ultimately refused to accept any checks from him, either as reimbursement or as payment for new supplies.

In March 1983 increasing financial pressures forced Lorenzo to sell his store. The buyer, Rafael Gomez, was one of the store's largest creditors, and had previously accepted approximately $20,000 in stolen checks from Hernandez.

On March 15, 1983, after the sale was completed, Lorenzo was arrested for handling the stolen checks and was released on bail. On a number of occasions he returned to the store and demanded that Gomez turn over to him the dishonored stolen checks that Gomez had received back from his bank. Gomez kept putting him off. Finally, Gomez turned over to the federal prosecutor photocopies of the dishonored checks he had in his possession. On the last occasion that Lorenzo appeared, Gomez told him the checks had been given to the government. The two men argued, and Lorenzo, becoming progressively more angry, stated that if Gomez did not produce the checks that night, he would kill him. Lorenzo then left the store and did not return.

Lorenzo was indicted on April 14, 1983. In a superseding indictment filed May 2, 1983, that for the first time also named his wife Ana, Lorenzo was charged with the nine counts listed above; Ana was named as a codefendant in the first five of those counts. After a six-day jury trial, Lorenzo was convicted on all nine counts and sentenced to two years on each count, to run concurrently. Ana was found guilty on count two and acquitted on the remaining four counts against her. She was sentenced under the Youth Corrections Act to thirty months' probation.

## II. DISCUSSION

### A. *Lorenzo Hernandez*

Lorenzo's sole contention on appeal is that he was improperly convicted on count eight of violating 18 U.S.C. § 1503. While he concedes that he was properly convicted on count nine of violating the Victim and Witness Protection Act, 18 U.S.C. § 1512, he contends that the conduct underlying both convictions, threatening a witness in order to obtain documentary evidence, no longer falls within the proscriptions of § 1503.

Chapter 73 of Title 18 of the United States Code, 18 U.S.C. §§ 1501–1515, proscribes conduct and prescribes penalties under the general heading "Obstruction of Justice". Until 1982, § 1503 of that chapter, entitled "Influencing or injuring officer, juror or witness generally", prohibited influencing or intimidating "any witness, * * * any grand or petit juror, or [court] officer" in the discharge of his duty, or injuring any of them for having discharged his duty. The section also contained a residual clause prohibiting anyone from obstructing "the due administration of justice". Under that former version of § 1503 Lorenzo's prosecution under count eight would unquestionably have been proper.

In 1982, however, congress enacted the Victim and Witness Protection Act, Pub.L. No. 97–291, 96 Stat. 1248 (1982), *reprinted in* 1982 U.S.Code Cong. & Ad.News (96 Stat.) 1248, to "strengthen existing legal protections for victims and witnesses of federal crimes". S.Rep. No. 532, 97th Cong., 2d Sess. 9, *reprinted in* 1982 U.S. Code Cong. & Ad.News 2515. By the new statute, congress removed from § 1503 all references to witnesses, leaving that section to protect jurors and court officers, and enacted a new section, § 1512, addressed specifically and in more detail to the protection of witnesses, informants, and crime victims from intimidation. By enacting § 1512 congress intended to remedy perceived inadequacies in the existing § 1503 by providing more extensive protection for witnesses and others. *Id.* at 2515, 2520–21. For example, § 1512 explicitly covers "potential" witnesses and those witnesses whose testimony might not be admissible at trial, whereas § 1503 did not necessarily cover such witnesses. Moreover, unlike § 1503, which proscribed influencing witnesses by corruption, threats, or force, § 1512 extends as well to intimidation and harassment, thereby establishing a lower threshold of criminal activity. *Id.* at 2521.

Hernandez argues that by enacting § 1512 specifically to cover witness intimidation and, at the same time, by deleting from § 1503 all references to witnesses,

congress clearly intended that threats against witnesses to induce them to withhold evidence would fall solely under § 1512. On the other hand, the government contends that although § 1512 absorbs some of the jurisdiction previously given to § 1503, congress intended, in effect, to create two crimes, making witness intimidation and harassment punishable not only under § 1512, but also under the residual clause of § 1503, which provides that "[w]hoever * * * corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice shall be [guilty of a crime]."

Viewing the actions of congress and the plain language of both statutes realistically, we agree with Lorenzo and conclude that congress affirmatively intended to remove witnesses entirely from the scope of § 1503. That intent is graphically demonstrated by examining those portions of § 1503 that congress expressly deleted, which are bracketed and underscored below:

§ 1503 Influencing or injuring officer, juror [*or witness*] generally

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any [*witness, in any court of the United States or before any United States Commissioner or other committing magistrate, or any*] grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States Commissioner or other committing magistrate, in the discharge of his duty, or [*injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or*] injures any such grand or petit juror in his person or

property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

We are unpersuaded by the government's argument that the residual clause of § 1503 still covers witness harassment. Not only does the argument defy common sense, but it is also contrary to the legislative history of Pub.L. No. 97–291. Senator Heinz, a prime mover of the bill, explained that the version of Pub.L. No. 97–291 finally enacted into law incorporated the house position, which had provided that § 1512 would replace that part of § 1503 that pertained to witnesses, rather than the senate bill, which had reflected the government's position in this case:

> The Senate-passed bill allowed a slight overlap between old section 1503 and new sections 1512 and 1513. The House version amends section 1503 so it will make no mention of, *and provide no protection to,* supenaed [sic] *witnesses. The compromise accepts the House position.* By *amending section 1503 in this way,* the proposal *will contribute to a clearer and less duplicative law.*

128 Cong.Rec. S 13063 (daily ed. Oct. 1, 1982). (Emphasis added)

■ In short, by enacting the Victim and Witness Protection Act in 1982, Congress intended that intimidation and harassment of witnesses should thenceforth be prosecuted under § 1512 and no longer fall under § 1503. Lorenzo's conviction on count eight was therefore improper, so it is vacated and that count of the indictment is dismissed. In view of the nine identical, concurrent sentences imposed by the district court, we do not think that resentencing on the remaining counts is necessary and, there being no challenge to the convictions on the other eight counts, they are affirmed.

## B. *Ana Hernandez*

Ana advances three grounds for reversal: (1) the trial judge erred in refusing to charge the jury pursuant to 18 U.S.C. § 2(b); (2) the trial judge erred in refusing her request to charge that "intent to defraud is not to be presumed from the mere making * * * of a false instrument"; and (3) a copy of the indictment given to the jury had been altered without notice to counsel or permission of the court. We find in none of these contentions any merit warranting reversal, and therefore affirm as to Ana.

Ana contends first that the trial judge erred in refusing her request to charge under 18 U.S.C. § 2(b). Ana and Lorenzo were charged jointly in count two with forgery of approximately ten government checks which had been endorsed by Ana. The government's evidence established that eight of the checks had been signed by Ana. She contended that she had no criminal intent, that she was not directly involved in the operations of the supermarket, and that she had signed the checks only as an accommodation to her husband, Lorenzo, without knowledge of the purpose or the unlawful character of her acts.

Before trial both the government and counsel for Ana submitted proposed jury charges. The government's requests included a standard instruction on aiding and abetting pursuant to 18 U.S.C. § 2(a). Counsel for Ana submitted 29 proposed instructions, and, in addition requested the court's "standard" charge on, among other things, "aiding and abetting". At a conference prior to summations, Judge Sand indicated that he would give the government's proposed aiding and abetting charge in substance. Defense counsel neither objected, nor proposed any other charge on the subject. Judge Sand not only charged aiding and abetting under 18 U.S.C. § 2(a), but

also instructed the jury, that, as to the elements of knowledge and intent:

> [i]f you find that the acts of Ana Hernandez as they relate to the transaction in question were performed solely at the direction or under the control of her husband, Lorenzo Rafael Hernandez, and without knowledge on her part of the unlawful character and purpose of the transactions that took place, then you must find her not guilty because she lacked the requisite intent.

After the charge was completed, Ana's counsel asked the court to add an instruction pursuant to 18 U.S.C. § 2(b), which provides:

> Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Judge Sand denied the request and later, ruling on Ana's post-verdict motion, explained that her request for a § 2(b) charge had been untimely because it was not made until after the charging conference, after the closing arguments, and after the charge itself had been completed. He reasoned that to give the requested § 2(b) charge belatedly would have prejudiced the other parties in the case because, for the first time, after both Lorenzo and the government had summed up, the jury would have been presented with an entirely new theory upon which Lorenzo could be found guilty. The court also concluded that in any event, the request did not have to be granted because the instruction given on knowledge and intent was sufficient to describe the requirement of intent as to Ana. We agree with the trial court's conclusions and accordingly reject Ana's contention on appeal.

Under Fed.R.Crim.P. 30, a request to charge may be filed "[a]t the close of evidence or at such earlier time during the trial as the court reasonably directs * * *." To enable the trial judge to prepare a proper charge and opposing counsel to prepare summations, as well as to object to any proposed instructions, the requests to charge should, at the very least, be presented prior to summations. *United States v. Tourine*, 428 F.2d 865, 869 (2d Cir.1970), *cert. denied*, 400 U.S. 1020, 91 S.Ct. 581, 27 L.Ed.2d 631 (1971). Ana's timely request for the "standard" aiding and abetting charge did not suffice as a request for a charge under § 2(b), especially in light of her failure to respond when the judge indicated he would instruct the jury following the government's request which was based on § 2(a). Thus, Ana's request for a § 2(b) instruction only after the trial judge had concluded his jury charge was untimely. *See United States v. Strassman*, 241 F.2d 784, 786–87 (2d Cir.1957).

Moreover, to have charged under § 2(b) after the summations would have prejudicially exposed Lorenzo to a new theory of criminal liability. The government had charged Lorenzo as a principal under § 2(a) because he had aided and abetted Ana's forgery, and it constructed its case accordingly. Under § 2(b) Lorenzo would have been implicated, not as an aider and abettor, but as a principal because he caused Ana to forge the checks. Thus, to have charged the jury under § 2(b) after the summations would have unfairly allowed Lorenzo to have been found guilty under that section without giving him any opportunity to respond.

Finally, even if we were to construe Ana's belated request as an exception to the court's charge as given, there was no error because the charge on intent was balanced and correct. Judge Sand granted Ana's fourth request to charge, which said, in substance, that if Ana acted solely at the direction or under the control of her husband and without knowledge on her part of the unlawful character and purpose of the transaction, then the jury would have to find her not guilty because she lacked the requisite intent. This instruction substantially encompassed Ana's theory that she was the innocent agent of Lorenzo, and it did not expose Lorenzo to liability under the additional theory included in the requested § 2(b) charge. What Ana would

have liked was a charge that provided the jury with a basis on which it could convict Lorenzo while acquitting her. Since the elements of the charges against her were properly explained to the jury, she cannot complain of the lack of an additional instruction, sought after summations, that would have altered the theory of her codefendant's liability. In sum, Judge Sand correctly denied Ana's belated request for a charge under § 2(b).

■ Ana next argues that Judge Sand erred in his charge because in granting one of her requests on intent to defraud he omitted the portion which stated "intent to defraud is not to be presumed from the mere making * * * of a false instrument." She also contends that the only evidence against her was the testimony of the handwriting expert that she had signed the endorsements and that it "was insufficient as a matter of law to support an inference of intent to defraud." We need not decide whether an unexplained forgery by itself would support an inference of intent to defraud, *but see United States v. Marshall*, 431 F.2d 944 (5th Cir.1970); *Wesley v. United States*, 384 F.2d 100 (9th Cir. 1967), because Ana's signing of a false endorsement was not the only evidence bearing on intent that was before the jury, and Judge Sand correctly permitted the jury to determine knowledge and intent from all the facts in the case. For example, there was evidence that Ana had signed false endorsements on not one, but eight checks; that although the supermarket was located in upper Manhattan, three of the checks, bearing the same date, were addressed to payees in Brooklyn having the same last name and the same street address; that two of them exceeded $500 and one exceeded $1,000; that when she gave her handwriting exemplars Ana falsely denied having had any contact with government checks and having ever seen her husband in possession of any such checks; that during the time her husband had operated the supermarket over 200 stolen government checks were negotiated through it; and that within a few months of her last forgery Ana became nominal

owner of the supermarket which continued to be operated by Lorenzo. On such evidence, the issue of intent was properly submitted to the jury.

■ Nor did the court err in deleting from Ana's request on intent that part which would have precluded an inference of intent "from the bare fact of her signing the endorsements". On an issue such as knowledge or intent, which is rarely subject to direct proof and which is almost always an inference to be drawn from a number of facts and circumstances in evidence, rarely if ever would a judge be required to give the negative type of instruction so frequently requested by defense counsel to the effect that fact A cannot be inferred solely from fact B. Certainly, Judge Sand did not err in refusing such a request here.

Finally, Ana argues that reversal is required because an unauthorized change in wording was included in the copy of the indictment prepared by the prosecutor at the court's request and thereafter given to the jury. Count two, as initially drafted by the Assistant United States Attorney, alleged in part:

> LORENZO RAPHAEL HERNANDEZ, and ANA HERNANDEZ, the defendants, unlawfully, wilfully and knowingly did falsely make, alter, forge and counterfeit orders, contracts and writings, for the purpose of obtaining and receiving, and of enabling other persons, directly and indirectly, to obtain and receive sums of money from the United States, and from officers and agents thereof, to wit, *she* falsely made, forged and counterfeited the payee endorsements on approximately ten United States Treasury checks with an aggregate face value of $4688.23. (Emphasis added).

Before signing the indictment, the grand jury foreman crossed out the word "she" and wrote in "Ana Hernandez". At trial, the court asked the prosecutor to redact a copy of the indictment by omitting three unproved overt acts in the conspiracy count. In addition to redacting the three

overt acts, however, the prosecutor also substituted the word "they" for the foreman's written reference to "Ana Hernandez" in count two. This redacted copy of the indictment was later given to the jury during its deliberations, but it was not given to either defendant, nor did the prosecutor consult them or the court about the substitution. Counsel for Ana says that he first learned about it when he received a copy of the joint appendix on appeal.

Certainly, the change from "Ana Hernandez" to "they" should not have been made. Even assuming that in the context of this count of the indictment the change, if authorized by the court, would have been a permissible one as to form rather than substance, see *Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 1050–51, 8 L.Ed.2d 240 (1962); *United States v. Cirami*, 510 F.2d 69, 72 (2d Cir.), *cert. denied*, 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 451 (1975); *United States v. Hall*, 536 F.2d 313, 319 (10th Cir.), *cert. denied*, 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976), such a change in a document to be submitted to the jury should never be made without notice to opposing counsel and approval by the court. We perceive no ulterior motive in the alteration, and attribute the error to some failure of communication within the prosecutor's office.

■ The essential question now before us, however, is what effect, if any, should this unfortunate incident have on the outcome of the appeal. Ana has not demonstrated, and we cannot discern, any prejudice to her resulting from the jury's having seen an erroneous copy of the indictment. The original indictment adequately informed Ana of the crime charged against her. The trial was conducted on the theory that she personally had forged endorsements on eight government checks and that her husband Lorenzo had aided and abetted her in that crime. This also was the substance of Judge Sand's charge on count two. Specifically, he charged:

> In the context of Count 2 of this indictment the government contends, and it is for you to determine whether that has

been proven beyond a reasonable doubt, that the defendant, Ana Hernandez, unlawfully forged the signatures on the approximately ten United States Treasury cheques named in the count, and that the defendant Lorenzo Hernandez aided and abetted her in the commission of that crime. Thus you must consider first whether the government has proved beyond a reasonable doubt that Ana Hernandez unlawfully forged the endorsement as charged in Count 2.

> If you find on all the evidence beyond a reasonable doubt that Ana Hernandez did commit that crime then you must consider whether the defendant, Lorenzo Hernandez, aided and abetted her in the commission of the crime.

> If, however, you find that the government has not proved beyond a reasonable doubt that Ana Hernandez committed the crime of forgery of the United States Treasury cheques, then you may not consider whether the defendant, Lorenzo Hernandez, aided and abetted the commission of such crime.

In the face of this instruction, we do not believe that it made any difference in the verdict whether the copy of the indictment given to the jury read that "Ana Hernandez" forged the checks, or "they" forged the checks. Ana's assertion that the change "completely shifted the focus of Count Two" from Ana alone to both Lorenzo and Ana does not help her. Since Ana and Lorenzo were named together in the earlier clauses of count two, the charge already involved both of them. The subsequent change did little, if anything, to sharpen that focus. Certainly, the change did not inject any additional charge against Ana, nor did it affect the essential issue of intent that the jury was called upon to decide.

Accordingly, although presenting the jury with an inaccurate copy of the indictment was unquestionably error, the error was harmless and does not warrant reversal of Ana's conviction.

## CONCLUSION

Lorenzo's conviction on count eight, the only count he has pressed on appeal, is reversed, and that count of the indictment is dismissed. Lorenzo's conviction on the remaining eight counts is affirmed. Ana's conviction on count two is affirmed.