**UNITED STATES, Appellee,**

v.

**Specialist Four Pedro J. ROSARIO, SSN 584–62–0926, United States Army, Appellant.**

**No. CM 443036.**

U.S. Army Court of Military Review.

27 Nov. 1984.

Captain William T. Wilson, JAGC, argued the cause for appellant. With him on brief was Major Stephen R. Dooley, JAGC.

Captain Kurt J. Fischer, JAGC, argued the cause for appellee. With him on brief were Colonel James Kucera, JAGC, Major John T. Edwards, JAGC, and Major Joseph A. Rehyansky, JAGC.

Before WOLD, NAUGHTON and CO-HEN Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

NAUGHTON, Judge.

This case is before the Court on remand from the United States Court of Military Appeals.

Contrary to his pleas, appellant was found guilty by a military judge sitting as a general court-martial of aggravated assault, conspiracy to commit assault, and obstruction of justice, in violation of Articles 128, 81, and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 928, 881, and 934 (1976), respectively. The convening authority approved appellant's sentence to a dishonorable discharge, confinement at hard labor for four years, forfeiture of all pay and allowances, and reduction to the grade of Private E–1. This Court affirmed the findings and sentence without opinion. *United States v. Rosario*, CM 443036 (ACMR 26 Sep. 1983) (unpub.). On 5 January 1984, the United States Court of Military Appeals, upon motion of the Government unopposed by appellant, remanded this case for our consideration of issues appellant raised for the first time in his petition to that Court.

The gist of the charged obstruction of justice offense was that on 8 June 1982 appellant wrongfully and unlawfully endeavored to influence the testimony of Specialist Four Ricky Smith as a witness before a court-martial by threatening to injure Smith.[1] Appellant now contends that his conviction for the obstruction of justice offense should be reversed because Smith was not a "witness" at the time of the threat. We do not agree.

The evidence adduced at trial indicates that after the conspiracy to commit assault charges against appellant were referred to trial by general court-martial, appellant asked Smith, who was one of appellant's roommates, to tell appellant's defense counsel that appellant had remained in their room on the night of the assault. Although Smith said nothing to appellant, Smith recalled seeing appellant leave their room on the night in question with a co-accused, Private First Class Justo DeJesus. DeJesus was carrying a bunk adaptor and appellant had a broomstick. The victim of the assault was beaten with such items. When questioned by appellant's defense counsel, Smith did not comply with appellant's request but, instead, stated that appellant had gone in and out of the room. Smith testified that he did not discuss his other observations with the defense counsel because appellant was present. Subsequently, on or about 6 June 1982, Smith told defense counsel for DeJesus what he had observed on the night of the assault.

Private First Class John Turriff, another of appellant's roommates, testified that appellant also asked him to state that appellant was in their room at the time of the assault. Turriff refused to do so. On 8 June 1982, appellant approached Turriff in the motor pool and told him "his buddy" Smith was "fucking up" and advised Turriff to speak to Smith. Appellant then made a gesture to Turriff in which he drew his finger across his throat. Turriff interpreted the gesture as a threat to Smith.

As noted above, appellant asserts that under these facts he could not be convicted

---

1. The specification pertaining to obstructing justice alleged that appellant—

    [D]id ... on or about 8 June 1982, wrongfully and unlawfully endeavor to influence the testimony of Specialist Four Ricky Smith as a witness before courts-martial in the cases of the United States versus Specialist Four Pedro J. Rosario, the United States versus Private First Class Justo DeJesus, the United States versus Specialist Four Sheila Howard and the United States versus Private First Class Victor Anglero, by communicating to Specialist Four John A. Turriff, a threat to injure the said Specialist Smith, by saying to said Specialist Turriff, "your buddy Ricky is fucking up," or words to that effect, and by then drawing his finger across his neck, these words and gestures together implying the cutting of the throat of the said Specialist Smith unless he would wrongfully refuse to testify or would give false testimony in the said trials concerning what he had observed on the morning of 31 March 1982, which threat was made under circumstances in which the said Specialist Rosario had reason to believe that the said Specialist Turriff would inform the said Specialist Smith of the threat.

of endeavoring to unlawfully influence a witness because Smith was not a "witness" when appellant made the threat against Smith on 8 June 1982. Appellant reaches this conclusion by assuming that the offense of obstructing justice under military law is equivalent to 18 U.S.C. § 1503 (1976) (current version at 18 U.S.C. § 1503 (1982)) which proscribed obstruction of justice under federal civilian law.[2] A witness within the meaning of § 1503 has been defined as "one who knows or is supposed to know material facts and who is expected to be called on to testify to them." *United States v. Tedesco*, 635 F.2d 902, 907 (1st Cir.1980), *cert. denied*, 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 974 (1981). Appellant argues that Smith was not a "witness" within this definition because at the time of the threat Smith had no intention of testifying for either side and the Government had no intention of compelling Smith's testimony since no Government agent had spoken with him.

However, appellant's assumption that the civilian precedents construing § 1503 are applicable to his conduct is not valid. Even where § 1503 has served as the model for alleging the military offense of obstruction of justice, it is only where that federal statute is used as the basis for charging an offense under the third clause of Article 134, UCMJ, which authorizes punishment of "crimes and offenses not capital," that the elements of the federal statute are controlling as to the definition of the offense alleged. *United States v. Ridgeway*, 13 M.J. 742, 745–46 (ACMR 1982). We hold that the specification here,

set out at note 1, *supra*, alleges a violation of the first or second clauses of Article 134, UCMJ, proscribing "disorders and neglects to the prejudice of good order and discipline" or "conduct of a nature to bring discredit upon the armed forces." Thus the Government was not limited to only the conduct or elements of similar offenses denounced by the Federal criminal statute. *United States v. Ridgeway*, 13 M.J. at 746.

In 1981, our brethren on the Air Force Court of Military Review re-affirmed the broad scope of the offense of obstructing justice under Article 134, UCMJ. *United States v. Caudill*, 10 M.J. 787 (AFCMR 1981), *pet. denied*, 11 M.J. 342 (CMA 1982). In that case Caudill threatened an individual in an attempt to induce him to testify falsely. At the time Caudill had no reason to believe the individual would actually be called as a witness. The Air Force Court of Military Review rejected the argument that since the individual was not a "witness" within the meaning of the first part of § 1503, Caudill could not be convicted under Article 134, UCMJ. The Court stated:

> Wrongfully influencing, threatening or impeding a person who is expected to be a witness or a person who simply has the potential to be a witness, when done for the purpose of affecting testimony, is, *per se*, prejudicial to good order and discipline and inimical to the effective functioning of military justice.

10 M.J. at 789. We find the Air Force Court of Military Review's reasoning per-

---

**2.** We note that until 1982, 18 U.S.C. § 1503 (1976), entitled "Influencing or injuring officer, juror or witness generally," prohibited influencing or intimidating "any witness, ... any grand or petit juror, or [court] officer" in the discharge of his duty, or injuring any of them for having discharged his duty. This section also contained an omnibus clause prohibiting anyone from "obstructing the due administration of justice." In 1982, Congress enacted the Victim and Witness Protection Act, Pub.L. No. 97–291, 96 Stat. 1248 (1982), *reprinted in* 1982 U.S.Code Cong. & Ad.News (96 Stat.) 1248, to "strengthen existing legal protections for victims and witnesses of federal crimes." S.Rep. No. 532, 97th Cong., 2d Sess. 9, *reprinted in* 1982 U.S.Code

Cong. & Ad.News 2515. Public Law 97–291 removed from § 1503 all references to witnesses, leaving that section to protect jurors and court officers, and enacted a new section, § 1512, addressed specifically to the protection of witnesses, informants, and crime victims from intimidation. The United States Court of Appeals for the Second Circuit recently considered the scope and effect of the legislative action in this area and held: "In short, by enacting the Victim and Witness Protection Act in 1982, Congress intended that intimidation and harassment of witnesses should thenceforth be prosecuted under § 1512 and no longer fall under § 1503." *United States v. Hernandez*, 730 F.2d 895, 899 (2d Cir.1984).

suasive and fully applicable to appellant's case. Appellant's conduct constituted obstruction of justice under Article 134, UCMJ.

Appellant also contends that the convening authority erred in failing to grant appellant administrative credit for pretrial confinement served. *See United States v. Allen*, 17 M.J. 126 (CMA 1984). We need not now rule on this matter. *See United States v. Clark*, 17 M.J. 431 (CMA 1984) (summary disposition).

The findings of guilty and sentence are, again, affirmed.

Senior Judge WOLD and Judge COHEN concur.