**UNITED STATES of America, Plaintiff/Appellee,**

v.

**Billy Franklin BRAND and Dennis Randall Watts, Defendants/Appellants.**

No. 84–7703.

United States Court of Appeals, Eleventh Circuit.

Nov. 12, 1985.

David B. Byrne, Jr., John M. Bolton, III, Montgomery, Ala., for defendants-appellants.

David L. Allred, Asst. U.S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before HILL and FAY, Circuit Judges, and HOFFMAN *, District Judge.

* Honorable Walter E. Hoffman, U.S. District Judge for the Eastern District of Virginia, sitting by designation.

WALTER E. HOFFMAN, Senior District Judge:

Billy Franklin Brand and Dennis Randall Watts appeal from their conviction and sentence on a one-count indictment charging obstruction of justice in violation of 18 U.S.C. § 1503. The case was tried before a jury. The specific offense was based upon events which occurred during an earlier prosecution of these same defendants for mail fraud pursuant to 18 U.S.C. § 1341.

Brand and Watts operated as partners in the sale of used cars at a dealership known as B & W Motor Company. As a result of an FBI investigation of B & W Motor Company during the latter part of 1983, defendants were charged in a five-count indictment with rolling back odometers and making use of the mails in a scheme to defraud customers.

The five counts were based on allegations of the sale of vehicles to five named individuals. Three of the counts were dismissed by the court upon the motion of the government. Defendants were found not guilty of one count, but were found guilty of the charge relating to the sale of a vehicle to Billy McCullar. The defendants were placed on probation for three years, conditioned upon payment of restitution in the sum of $799.00 and a fine of $1,000.00. This judgment is not the subject of this appeal.

Prior to the beginning of trial in the odometer/mail fraud case, the government learned that defendants had allegedly sought to obtain a false written statement from Billy McCullar, a witness subpoenaed by the government. This endeavor resulted in a prosecution of Brand and Watts for attempting to influence, obstruct and impede the due administration of justice by endeavoring to obtain from McCullar a false written statement for use in a case in which Brand and Watts were defendants. Defendants were subsequently found guilty of obstruction of justice and they filed this timely notice of appeal.

## I.

On March 6, 1982, McCullar purchased a 1979 Ford pickup truck from B & W Motor Company. At the time of purchase the truck had 42,716 miles registered on the odometer, even though the truck had actually been in excess of 82,000 miles. McCullar neither knew nor had any reason to believe that the odometer was not accurate, except that he knew that the recorded mileage was not guaranteed.

When McCullar made the purchase he was given a bill of sale which stated that the mileage on the truck was not guaranteed. Several days later an odometer statement was mailed to McCullar which had not been checked in the space provided on the form to indicate the mileage on the vehicle was accurate.

In November of 1983, Long, a special agent with the FBI, held several discussions with Brand and Watts, pursuant to an investigation that they had altered the odometers on vehicles at B & W Motor Company. Subsequent to these discussions, Brand and Watts signed written statements attesting to their responsibility for the altering of odometers in at least fifteen vehicles, including the truck sold to McCullar.

Watts admitted in his statement that he specifically sold the truck to Billy McCullar and that Billy McCullar was not informed that the odometer was altered to indicate fewer miles than actually had been driven.

Based upon the statements given Agent Long, defendants were indicted on five counts of mail fraud. Defendants represented to Curtis Gordon, the attorney defending Brand and Watts when indicted, that they were innocent of the charges; that they had not defrauded nor deceived any of their customers who made purchases of used automobiles.

While negotiating the case with David L. Allred, an Assistant United States Attorney, Gordon communicated defendants' belief that, when the vehicles were sold, the customers were aware that the odometers were not accurate, and that the customers had signed affidavits to that effect when making the purchase.

The government attorney asked Gordon to produce affidavits from the customers to reaffirm that they were aware the odome-

ter was incorrect, or that it had been altered, and that the government would, in turn, dismiss the case or reduce the felonies to misdemeanors. Allred explained to Gordon that the statements from the customers would have to discuss the mileage and it would not suffice for the affidavit to say that the customers had a bill of sale stating that the mileage was not guaranteed.

Gordon conveyed to Brand and Watts the substance of the discussion with the government attorney. Gordon advised defendants to meet with the customers they were charged with defrauding and to obtain affidavits setting out the circumstances of the purchase, and the fact that they were aware, if they were aware, that the odometers were not accurate when they purchased the vehicles. Gordon stated to defendants that it was important that defendants get these documents to him so that he could give them to the government attorney. Gordon further stated to defendants that he wanted to meet with these witnesses, but he was having problems in locating them.

Defendants contacted Dale McCullar to arrange a meeting with Billy McCullar.[1] Dale McCullar phoned Billy McCullar and informed him that Brand and Watts had a statement they wanted him to sign that would take care of the entire matter, and that no one would have to go to court.

Brand and Watts, accompanied by Dale McCullar, visited Billy McCullar at Billy McCullar's home one afternoon, and during the course of approximately one hour, and in the presence of several other people,[2] Brand and Watts requested Billy McCullar to sign a statement more than once, perhaps as many as three times. Billy McCullar testified that he was shown a typewritten statement which said:

"I, _____, purchased this vehicle described below from B & W Motors with knowledge the speedometer was not correct at the time of purchase."

Billy McCullar further testified that defendants told him they were not responsible for rolling back the odometer on his truck, and that Billy McCullar's truck was the only one involved in the case. Billy McCullar stated he told Brand and Watts he could not sign the statement because it was not true.

However, Billy McCullar agreed to sign, and did sign, a statement which he believed to be true, which he dictated to defendants saying:

"I bought this 1979 Ford pickup, serial number from B & W Motor Company, and they didn't guarantee miles to be correct."

Billy McCullar conceded at the obstruction of justice trial that Brand and Watts did not bribe or threaten him; nor influence his testimony; nor prevent him from appearing in court; nor attempt to tell him what his testimony should be. Consistent with the foregoing testimony, Billy McCullar stated on cross-examination that he had even intended on riding to court with defendants on the day of trial.

Watts testified and denied that he altered the odometer of Billy McCullar's truck. Watts further denied that the statement shown to Billy McCullar was false. Watts stated that he first showed Billy McCullar a statement that was signed by Troy Guthrie, another customer/witness in the mail fraud case. When Billy McCullar refused to sign that statement, Watts stated he returned to his car and got a blank statement, turned it over, and wrote out what Billy McCullar agreed he would sign.

Watts testified that he did not consider the statement he first showed to Billy

---

1. Watts testified that he and Brand did not know Billy McCullar, or where he lived; that Watts met Dale McCullar in school and Watts assumed they were relatives because of the same last name. McCullar testified that he knew Billy McCullar, but the two were not related.

2. Brand testified that Billy McCullar's wife, son, and daughter-in-law were at the house and that the entire conversation took place on the front porch in their presence. There does not appear to be any dispute as to these facts, as Dale McCullar, called by the prosecution, stated that he was engaged in conversation with members of Billy McCullar's family while Brand and Watts were talking with Billy McCullar.

McCullar to be false because there was little difference between that statement and the one Billy McCullar signed when he purchased the vehicle, stating the mileage was not guaranteed to be accurate.

Watts further denied that the statement he signed and gave to FBI Agent Long was true and accurate. Although Watts admitted to signing a document which stated he had rolled back odometers on certain vehicles, Watts said that he was led to believe, by Agent Long, that it would be easier for defendants, Brand and Watts, if they cooperated and signed the document; that the most severe penalty defendants could incur was a fine or a misdemeanor.

Watts testified that he and Brand visited Billy McCullar only pursuant to the advice of counsel. Watts stated that neither he nor Brand made any false statements to Billy McCullar to induce Billy McCullar into signing the document and, in fact, the allegedly false statement was never signed by McCullar, nor was it presented in evidence. In reference to the testimony given by Billy McCullar when he stated that he was told that he was the only person involved in the case, Watts explained he and Brand had told Billy McCullar there were other statements to be signed and that defendants had talked with all the other witnesses.

Brand also testified and denied any wrongdoing concerning the odometer and the written statement. Brand testified that the statement that he and Watts requested Billy McCullar to sign was the same as the statement the other witnesses had signed, and that the statement was what their attorney had advised defendants was needed to have the case dismissed.

Brand further denied that he was at the dealership when McCullar initially purchased the truck. Brand testified to an exhibit introduced, namely the bill of sale given to Billy McCullar, which included the salesman's initials as "M." Brand testified the initials as that of Mike Smallwood, the salesman whom Brand stated sold the truck to Billy McCullar.

Brand stated defendants showed McCullar the statement of Troy Guthrie and inquired of Billy McCullar, whether the circumstances on the statement were the way Billy McCullar remembered them. When McCullar said the statement was not true, Brand testified that he and Watts went to the car and got an unsigned statement, turned it over, and wrote out what Billy McCullar said he would sign.

Agent Long, in rebuttal testimony for the government, denied making representations to defendants that if they signed documents admitting to rolling back odometers, defendants would receive a fine or, at most, a misdemeanor charge.

Brand and Watts were both subsequently found guilty of obstruction of justice and sentenced to three years imprisonment, but only required to serve six months confinement with the execution of the remainder of the sentence suspended for a three-year probationary period. 18 U.S.C. § 3651. Defendants' post-trial motions for judgment of acquittal, reduction of sentence and for a new trial, were all denied.

Defendants raise two contentions as a basis for reversal of their convictions. Primarily, defendants contend that the nature of conduct as proven, does not evince a corrupt intent to impede the "due administration of justice" as required to sustain a conviction under § 1503. Brand and Watts further argue that the Victim and Witness Protection Act of 1982 deleted all references to "witness" in § 1503,[3] and at the same

---

**3.** The pre-1982 version of 18 U.S.C. § 1503 provided as follows:

Whoever corruptly, or by threats of force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness in any court of the United States or before any United States commissioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of

time, Congress enacted § 1512,[4] which specifically addresses the protection of witnesses. Defendants thus maintain they should have been charged, if at all, under § 1512.

The conclusion we reach in discussing defendants' first contention on appeal makes it unnecessary for us to discuss the second issue raised by defendants. We are persuaded that defendants' convictions must be reversed for the reason that the facts adduced at trial fail to establish an offense against the United States which comes within the purview of § 1503 as we have historically interpreted that provision.

## II.

Section 1503 can be divided into two parts: the specific language prohibiting any endeavor to influence, intimidate or impede any grand or petit juror, or officer in the discharge of his duties; and the concluding omnibus clause under which defendants were prosecuted, which prohibits the influencing, obstruction, or impeding of the due administration of justice. (West, 1985 Supplement).

his testifying or having testified to any matter, pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force of by any threatening letter of communication, influences, obstructs or impedes, or endeavors to influence, obstruct or impede, the due administration of justice shall be fined not more than $5,000 or imprisoned not more than five years, or both. 18 U.S.C. § 1503 now provides as follows: Whoever corruptly, or by threats of force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceedings before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats of force, or by any threatening letter of communication, influences, obstructs, or impedes, or endeavors to influence, obstruct or impede, the due administration of justice shall be fined not more than $5,000 or imprisoned not more than five years, or both.

**4.** 18 U.S.C. § 1512 provides in pertinent part: (a) Whoever knowingly uses intimidation or physical force, or threatens another person or attempts to do so, or engages in misleading conduct toward another person with intent to—
 (1) influence the testimony of any person in an official proceeding;
 (2) cause or induce any person to—

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;
(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;
(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceedings; or
(D) be absent from an official proceeding to which such person has been summoned by legal process; or
(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;
shall be fined not more than $25,000 or imprisoned not more than ten years, or both.
(b) Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from—
 (1) attending or testifying in an official proceeding;
 (2) reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;
 (3) arresting or seeking the arrest of another person in connection with a Federal offense; or
 (4) causing a criminal prosecution, or a parole or probation revocation proceeding to be sought or instituted, or assisting in such prosecution or proceeding;
or attempts to do so, shall be fined not more than $25,000 or imprisoned not more than one year, or both.

We have stated more than once that the omnibus clause is broad enough to cover any act committed corruptly, in an endeavor to impede or obstruct justice. *United States v. Silverman*, 745 F.2d 1386, 1393 (11th Cir.1984); *United States v. London*, 714 F.2d 1558, 1567 (11th Cir.1983); *United States v. Howard*, 569 F.2d 1331, 1334 (5th Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978); *United States v. Partin*, 552 F.2d 621, 631 (5th Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977). Whether Congress intended to remove proscribed conduct against witnesses from the scope of the omnibus clause, we need not decide, because even if Congress did not so intend, the essential crime of obstruction of justice would not have been established in the present case.[5]

■ In order to sustain a conviction under the omnibus clause of § 1503, the government must show that the accused (1) corruptly or by threats, (2) endeavored, (3) to influence, obstruct, or impede the due administration of justice. *United States v. Silverman*, 745 F.2d at 1392; *United States v. Fasolino*, 586 F.2d 939, 940 (2d Cir.1978). The term "corruptly" is the specific intent of the crime *United States v. Haas*, 583 F.2d 216, 220 (5th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1788, 60

L.Ed.2d 240 (1979), and the term takes on different meanings in various contexts. *United States v. Partin*, 552 F.2d at 642 n. 26. "Endeavor" describes any effort or assay to accomplish the evil purpose the statute was enacted to prevent. *United States v. Silverman*, 745 F.2d at 1393. However, only that is proscribed which produces or *which is capable of producing an effect* that prevents justice from being duly administered. *United States v. Howard*, 569 F.2d 1331, 1335 (5th Cir.1978).

■ The offending conduct must be prompted, at least in part, by a "corrupt motive," *id.* at 1336 n. 9, and if there is a fair doubt as to whether the defendants' conduct is embraced within the prohibition, the policy of lenity requires that the doubt be resolved in favor of the accused. *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); *United States v. Porter*, 591 F.2d 1048 (5th Cir.1979).

After having carefully reviewed the evidence adduced at trial and attaching to the testimony all of the probative weight and legitimate inferences most favorable to the government, *see Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), the testimony, in essence, serves to establish that: (1) defendants visited Billy McCullar and showed him a typewritten statement that Billy McCullar re-

---

**5.** Although this is an issue of first impression in the Eleventh Circuit, defendants urge the Court to adopt the holding of the Second Circuit in the case of *United States v. Hernandez*, 730 F.2d 895 (1984), where the panel agreed and concluded that Congress "affirmatively intended to remove witnesses *entirely* from the scope of § 1503." [Emphasis added]. In *Hernandez*, the defendant was prosecuted under both § 1503 and § 1512 for the threatening of a witness in order to obtain documentary evidence. The Second Circuit determined that Congress no longer intended that conduct such as witness intimidation fell within the prohibition of § 1503. *Hernandez* at 898.

The Fifth Circuit has rejected the conclusion in *Hernandez* that threats against witnesses should fall exclusively under § 1512, relying primarily upon *United States v. Beatty*, 587 F.Supp. 1325 (E.D.N.Y.1984). *See United States v. Wesley*, 748 F.2d 962 (5th Cir.1984). In *Beatty*, the district court observed that the extent of *Hernandez* appeared to be narrowed in the *Hernandez* opinion when the Court said: "In short,

by enacting the Victims and Witness Protection Act in 1982, Congress intended that *intimidation and harrassment of witnesses* should thenceforth be prosecuted under § 1512 and no longer fall under § 1503." *Beatty* at 1331 [Emphasis added].

The court recognized in *Beatty* that § 1512 protects witnesses specifically from influence by intimidation, harrassment, corruption, threats or force, and to conclude that *Hernandez* literally intended to remove all other types of witness tampering from the scope of § 1503 would be to impede the Congressional intent of broadening the protection afforded witness because conduct such as "urging, suggesting and instructing" a witness could no longer be prosecuted under the omnibus clause of § 1503 or § 1512. *Id.*

Similarly, the Ninth Circuit reached the same conclusion as that in *Beatty*. *United States v. Lester*, 749 F.2d 1288 (1984). *See also, United States v. King*, 597 F.Supp. 1228 (W.D.N.Y.1984) (where the prosecution was under § 1512 and the Court held that it should have been under § 1503, relying upon *Beatty, supra*).

fused to sign because he believed it to be a false statement insofar as he, McCullar, was concerned; (2) defendants further represented to Billy McCullar that defendants had not altered the odometer on Billy McCullar's vehicle; (3) defendants stated to Billy McCullar that Billy McCullar was the only person involved in the case; (4) Billy McCullar agreed to sign a statement which he believed to be true; and (5) defendants did not bribe, threaten, attempt to influence the testimony, or prevent Billy McCullar from testifying at trial. Based upon these facts, the jury found defendants committed a corrupt endeavor, tending to impede the due administration of justice. We disagree because the facts do not involve a violation of § 1503.

 Recognizing that all reasonable inferences and credibility choices must be made in favor of the jury verdict, *United States v. Pintado*, 715 F.2d 1501, 1503 (11th Cir.1983), *United States v. Blasco*, 702 F.2d 1315, 1330 (11th Cir.1983), *cert. denied*, 464 U.S. 914, 104 S.Ct. 276, 78 L.Ed.2d 256, and that it is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc) *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983),[6] we do not believe the facts, as proven, support the jury verdict.

**6.** Decisions of Unit B of the former Fifth Circuit are binding upon this court. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982).

**7.** In the Act of March 2, 1831, Section 2 provided:

> That if any person ... shall corruptly, or by threats or force, endeavor to influence, intimidate, or impede any juror, witness or officer, in any court of the United States in the discharge of his duty, or shall, corruptly or by threats of force, obstruct, or impede, or endeavor to obstruct or impede, the due administration of justice therein, every person ... so offending, shall be liable to prosecution therefor, by indictment....

**8.** In *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), the petitioner, an attorney, was convicted of criminal contempt in

**III.**

 Simply stated, the facts in the instant case, accepted in the light most favorable to the government, do not give rise to a prosecution under 18 U.S.C. § 1503. We are obliged to vacate the judgments of conviction in the obstruction of justice case, and remand with directions to dismiss the indictment.

The history of § 1503 has its origin with the Act of March 2, 1831, 4 Stat. 487, which attempted to distinguish between comtemptuous acts or conduct committed in the presence of the court "or so near thereto as to obstruct the administration of justice," *see Nye v. United States*, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941), and those acts of contempt occurring beyond the presence of the court. Section 1 of the Act of March 2, 1831, provided for summary proceedings as to misbehavior taking place in the presence of the court, "or so near thereto," etc. Section 2 of the Act of March 2, 1831, is the forerunner of the present statute, 18 U.S.C. § 1503.[7] It provided that contempts taking place beyond the presence of courts must be prosecuted by indictment and trial. *Savin, Petitioner*, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150 (1889). *See*, 18 U.S.C. § 401 (covering acts in the court's presence), and 18 U.S.C. § 1503 (prohibiting contemptuous conduct away from the court).[8]

The case of *In re Michael*, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30 (1945), pertained to

an Illinois state court, without a jury trial which he had demanded. The facts were that Bloom had filed a spurious will for probate in the Illinois court. The putative testator died on July 6, 1964, after which Bloom was employed by a practical nurse for the decedent, to draw and execute a will in decedent's name. The will was back-dated to June 21, 1964. Bloom knew that the will was false when he presented it for probate. The Court, referring to Sections 1 and 2 of the Act of 1831, held that Bloom, charged with a serious offense, was entitled to a jury trial. *Bloom*, in referring to the First Amendment, states that there is a ban to punishment "for a broad category of arguably contemptuous out-of-court conduct." While we do not believe it necessary to suggest the element of freedom of expression under the First Amendment, there may be merit to same in light of the defendants' conversation with McCullar.

a contempt trial involving a grand jury proceeding. The only evidence of possible misconduct was his false swearing. The trial court disbelieved Michael and found that his grand jury testimony was false. The Court held that perjury alone lacks the element of obstruction which is the essence of contempt. As Justice Black said:

All perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth. Therefore, it cannot be denied that it tends to defeat the sole ultimate objective of a trial. It need not necessarily, however, obstruct or halt the judicial process. For the function of a trial is to sift the truth from a mass of contradictory evidence, and to do so the fact-finding tribunal must hear both truthful and false witnesses.

In *United States v. Essex*, 407 F.2d 214 (6th Cir.1969), in an aftermath of the James R. Hoffa trial and in support of his third motion for a new trial, three young girls, including Essex, a juvenile, filed affidavits alleging that they had sexual intercourse with several petit jurors while the jury was sequestered. Essex, a minor, was proceeded against under the Federal Juvenile Delinquency Act, 18 U.S.C. § 5031, *et seq.*, with the basic charge being under 18 U.S.C. § 1503, charging obstruction of justice in filing her false affidavit which she knew was false when made. After discussing the origin of § 1503 as a contempt statute, the Court said:

Since the statute before us, 18 U.S.C. § 1503, is also a contempt statute the obstructive element, that is, impeding the court in the conduct of its business or endeavoring to do so beyond the mere rendering of false testimony, must, we believe, be alleged and proved before conviction can be had under it. [Citation omitted]. Appellant, as in *In re Michael*, was charged with rendering false testimony and nothing more; although she may have perjured herself—and we do not decide this—she did not endeavor to influence or interfere with "officer(s), juror(s) or witness(es)" within the meaning

of 18 U.S.C. § 1503, nor was she so charged.

The Sixth Circuit continued:

We would have little difficulty finding a violation of 18 U.S.C. § 1503 had the allegations of Appellant's affidavit been true ... We refuse to broaden the obstruction of justice statute beyond the scope that Congress gave to it. As a criminal statute 18 U.S.C. § 1503 requires strict construction. The general clause at its end, moreover, must be read to embrace only acts similar to those mentioned in the preceding specific language. [Citation omitted]. Neither the language of Section 1503 nor its purpose make the rendering of false testimony alone an obstruction of justice. If appellant committed any offense at all, it was the perjury charged in the information against her.

*Smith v. United States*, 234 F.2d 385 (5th Cir.1956), an opinion by Judge Tuttle, is not to the contrary, although the final result was an affirmance of the conviction on the obstruction of justice charge. Originally charged with violations of Fair Labor Standards Act, 29 U.S.C. § 207, Smith, in preparation for his trial, prepared and obtained statements, ostensibly under oath, from several persons mentioned in the Fair Labor Standards Act charge. He then presented these affidavits and other communications to the Assistant United States Attorney, knowing that the Fair Labor Standards Act charge was pending trial, and that the affidavits were false. In upholding the jury verdict on the obstruction of justice indictment, Judge Tuttle concludes:

His [Smith's] act in obtaining their statements in the form of an affidavit which he prepared and presented to them to sign without reading or explanation and subsequently passed off on the prosecuting officers as documents solemnly sworn to, supplies the ingredient of "corruptly" doing the acts. The same is true as to the count relating to the corrupt endeavor to influence, obstruct or impede the due administration of justice.

In the instant case, no McCullar affidavit or statement which could be construed as

false was ever produced in court or delivered to an Assistant United States Attorney.

## IV.

Tested by these principles of law, we attempt to summarize our views. At the outset we consider this case a dangerous precedent if the convictions are upheld. It is common practice for attorneys, investigators, insurance adjusters, and law enforcement agents, both state and federal, to attempt to obtain signed statements of witnesses in criminal and civil cases. If they are to be confronted (as they frequently are), with charges of persons claiming that a statement was false, thus resulting in an obstruction of justice charge even though the statement was never submitted to a prosecutor or to the court, a new wave of cases will be filed by federal or state authorities.

As applied to this case, we are not even certain that there was a false statement involved. McCullar's testimony [9] does not mention the name "Troy Guthrie." Defendants testified that the first typewritten form presented to McCullar had been signed by Guthrie, and they inquired whether McCullar would sign it, or one similar to it. We need not determine precisely what happened at the time. If the first statement had actually been signed by Guthrie, there is no evidence that it was false. If the first statement was blank as to the name, it was not a completed statement and was therefore not a false statement, even though, had McCullar signed the typewritten form, it would then, according to McCullar's testimony, be false. In any event, no *false* statement found its way into the hands of the Assistant United States Attorney, who apparently had invited such action in his conversations with Gordon, the attorney representing Brand and Watts at that time; [10] nor did any false statement reach the court in the odometer/mail fraud case.

We should not overlook the fact that, as between Gordon and the Assistant United States Attorney, it had been agreed that counts of the indictment would be dismissed if affidavits were forthcoming to the effect that purchasers of the vehicles had knowledge of the fact that the speedometers were not correct at the time of the purchase of the vehicle. This is essentially the wording of the typewritten form which defendants were urging McCullar to sign, but which he refused to sign as it was untrue as far as he was concerned.

Acting on the advice of their counsel as to a procedure established by agreement with the Assistant United States Attorney, we fail to see what is "corrupt" in endeavoring to secure McCullar's signature to a prepared form such as described herein. It is true that Brand and Watts had previously signed admissions of their "responsibility" in rolling back the odometer on McCullar's truck which he purchased two years

---

**9.** Questioned as to what Brand and Watts said and did, McCullar said:

> And they had a typed out piece of paper showing a bunch of stuff on it that they wanted me to sign and thought that they would get it taken care of down here, and we wouldn't even have a trial about it the other time, let alone being back down here today.

> . . . . .

> Q. Let me show you what I have marked as Government's Exhibit Number 5 and ask you if you recognize that piece of paper, please?
> A. Yes, sir.

> . . . . .

> Q. And can you read what it said before that language was marked out?
> A. Just, "I blank purchased this vehicle described below from B. and W. Motors," and I can't make that out real good.

The actual wording of the reverse side of McCullar's statement on which one of the defendants wrote his true statement, said:

> "I, _____, purchased this vehicle described below from B. and W. Motors with knowledge that the miles on the speedometer was not correct at the time of purchase."

McCullar was not questioned as to whether the name "Troy Guthrie" appeared on any typewritten statement; nor whether Brand and Watts first showed him a statement signed by Guthrie and, after he declined to sign same, they returned to their car and obtained a blank statement with no name appearing thereon.

**10.** Gordon withdrew as counsel for Brand and Watts shortly thereafter. The reasons for his withdrawal are not disclosed by the record. Gordon did not serve as the trial attorney in the odometer/mail fraud case.

previously,[11] but they are not charged with guilty knowledge of their acts—the offense charged is obstruction of justice. Perjury alone lacks the element of obstruction which is the essence of contempt. *Essex, supra,* at 218. They could not be specifically charged under the first portion of § 1503 as, by that date, the "witnesses" had been deleted from § 1503 and placed under § 1512. Even the government concedes, as indeed it must, that whatever offense was committed was an overall obstruction of justice, which means, essentially, that the court must have been corruptly impeded in some manner in administering justice. Such evidence was not present in the odometer/mail fraud case and, therefore, the obstruction of justice falls.

The proscription against false statements grew out of the making of false statements to law enforcement officers, 67 C.J.S., Obstructing Justice, § 20; not to witnesses who have no direct effect on law enforcement or other governmental operations. In *Harrington v. United States,* 267 Fed. 97 (8th Cir.1920), the defendants were charged with a conspiracy to obstruct justice when they planned to cause one Mary Pittman, a necessary witness in the trial of an indictment against Anderson for violation of the White Slave Act (transporting a woman in interstate commerce for the purposes of prostitution and debauchery), to make certain written statements which would contradict her grand jury testimony. Scattergood, one of the defendants in the obstruction of justice charge, was an attorney employed by Anderson in the White Slave Act case. The Eighth Circuit said:

> It is not an unlawful attempt to influence or impede a witness, or the due administration of justice, for one to seek to obtain from a witness a statement of the facts as he believes them to be, without the exercise of undue influence, even though such a statement may conflict with prior testimony given by the one making the statement. Such an effort is not regarded with favor, because of the temptation to influence the witness unduly; but the mere request for a statement believed to be true does not offend against the statute under which this indictment was drawn, because it is not corrupt conduct.

In the instant case, at least initially, Brand and Watts had not previously discussed with McCullar the rolling back of any odometer. They were hopeful that McCullar, as well as other witnesses named in the indictment, would agree that the circumstances under which they purchased the used vehicles would tend to show that the purchaser knew, or should have known, of the roll back. It is true that Brand and Watts had assumed the "responsibility" for the roll back of the odometer on McCullar's truck, as well as other vehicles—some fifteen in number—but the knowledge of their guilt by way of "responsibility" did not foreclose their right to ascertain what McCullar proposed to state as a witness. When finally advised by McCullar that he would refuse to sign the requested statement, they accepted as an alternative the true statement signed by McCullar to the effect that there was no guarantee made by Brand and Watts as to the accuracy of the mileage on the odometer. This is not a situation in which the witness had previously testified before a grand jury, or other body. Moreover, the case does not present, as confirmed by McCullar, that Brand or Watts made any effort to alter his testimony, or influence it in any manner; nor are we concerned with any suggested bribe,[12]

11. In all probability the conviction was due to the testimony of Brand and Watts who attempted to direct the impact of their prior confessions by representing to the jury that their admissions to Agent Long were due to promises of leniency by Long, all of which was denied by him.

12. Billy McCullar did testify that Dale McCullar, in his telephone call to arrange the meeting with Brand and Watts, mentioned something about "money." He was not pressed for any further explanation. When Dale McCullar was called as a witness for the government, he was not interrogated as to the details of the telephone conversation; nor was he asked for an explanation as to the possible use of the word "money." Neither Brand nor Watts were questioned as to what they had instructed Dale McCullar to do, other than to arrange an appointment with Billy McCullar. Assuredly this brief statement by Billy McCullar, without any explanation, cannot

threat, or any attempt to persuade McCullar from testifying to what McCullar said was the truth of what he knew or did not know. In our view, in the absence of any circumstances tending to show the impeding of the administration of justice through any juror or officer of the court, the mere attempt to secure a statement from a potential witness falls short of even being within the outer-limits of § 1503. Unlike a juror or other officer of the court, a potential witness belongs to neither side, whereas a juror or other officer of the court is directly involved with the administration of justice. Indeed, an attorney for a defendant in a criminal action is generally under an obligation to ascertain the substance of the testimony of any known potential witness. In this case, Gordon, the attorney for Brand and Watts, requested that the defendants attempt to obtain the statement as suggested by the conference between the attorney for defendants and the Assistant United States Attorney.

The very timing of what the government contends was an endeavor to obtain a false statement is pertinent in determining the *mens rea* of the defendants, Brand and Watts. In *United States v. Moon*, 718 F.2d 1210, at 1235 (2d Cir.1983), a co-defendant was charged in one count under § 1503 for knowingly submitting false and misleading documents to a grand jury, which documents were backdated. The obstruction of justice conviction was reversed, primarily on the ground that the documents had been subpoenaed by the grand jury and there was no evidence of the corrupt intent of the co-defendant in producing the backdated documents. While *Moon* differs from what we have here because the documents were subpoenaed, there is a comparable situation, where the Assistant United States Attorney lends his agreement to the procedure used.

### V.

Limiting our holding to the specific facts of this case, we conclude the trial court should have granted the defendants' mo-

tion for judgment of acquittal made at the conclusion of all of the evidence. We reverse the convictions on the obstruction of justice charge, and direct that the indictment be dismissed.

REVERSED.

be interpreted to suggest a "bribe" or "inducement."