UNITED STATES of America,
Plaintiff–Appellee,

v.

Boyd Patrick FIELDS,
Defendant–Appellant.

No. 87–3240.

United States Court of Appeals,
Eleventh Circuit.

March 11, 1988.

---

Rudy Hernandez, Jacksonville, Fla., Alan B. Fields, Jr., Palatka, Fla., for Fields.

Robert Merkle, U.S. Atty., Kathleen O'Malley, Asst. U.S. Atty., Jacksonville, Fla., for U.S.

Before VANCE and HATCHETT, Circuit Judges, and O'KELLEY *, District Judge.

HATCHETT, Circuit Judge.

This appeal presents the question of how far one may go in obtaining false statements in anticipation of a judicial proceeding before one may be held to have "endeavored" to obstruct justice under 18 U.S.C. § 1503. Finding that our circuit law does not require that the false statements be used in a judicial proceeding or be delivered to an officer of the court, we affirm the convictions.

A federal grand jury returned an indictment charging the appellant, Boyd Patrick Fields, and Lee Warren Wilhite with federal firearms violations. The indictment charged Fields and Wilhite with one count of possessing and causing the possession of a sawed-off shotgun (26 U.S.C. §§ 5861(d), 5871, 18 U.S.C. § 2) and one count of transferring and causing the transfer of a

sawed-off shotgun (26 U.S.C. §§ 5861(e), 5871, and 18 U.S.C. § 2).

Later, the grand jury returned a superseding indictment charging the same two counts plus a third count which charged only Fields with obstruction of justice, in violation of 18 U.S.C. § 1503. The district court granted the government's motion to dismiss the charges against Wilhite. Fields's trials for the firearms violations and for the obstruction of justice charge were separate. Because of entrapment, the district court found Fields not guilty of the firearms violations, but found him guilty of the obstruction of justice charge.

At Fields's trial for obstruction of justice, Wilhite testified that following their arrest, Fields asked him to take full responsibility for the firearms violations and to exculpate Fields from any criminal liability for the firearms violations. Wilhite testified that Fields was concerned about the effect a felony conviction might have on Fields's probationary status in an unconnected state criminal case. Wilhite agreed to do so. Fields then convinced Wilhite to go to the offices of Fields's father, a lawyer, and to knowingly give a false sworn statement in which Wilhite denied that Fields had participated in the sale of the sawed-off shotgun. At trial, Wilhite specified seven false answers he gave in response to questions put to him by Fields's father. One exchange at trial is illustrative, and begins with Wilhite's reading of a question put to him by Fields's father:

[WILHITE (reading from sworn statement)]: 'Did Boyd Patrick Fields, did you see him know anything about or participate in either the possession or the alteration of [the shotgun]?'

[PROSECUTOR]: What answer did you give?

[WILHITE (reading)]: 'No, sir.'

[PROSECUTOR]: Was that true?

[WILHITE]: No, ma'am.

Near the time Wilhite made the false sworn statement to Fields's father lawyer,

* Honorable William C. O'Kelley, U.S. District Judge for the Northern District of Georgia, sitting by designation.

the government notified the lawyers for Fields and Wilhite that the informant who purchased the sawed-off shotgun had been wearing a recording device. Once Fields's lawyer learned of the informant's recording, he provided Wilhite's lawyer with a copy of Wilhite's false sworn statement. Wilhite's lawyer advised Wilhite that the statement could be used against him by Fields and the prosecutor. After advising the United States Attorney's Office of the statement, and after some negotiation, Wilhite's lawyer advised him to cooperate fully with a law enforcement investigation regarding the taking of the statement. Pursuant to this cooperation, law enforcement agents monitored a telephone call from Wilhite to Fields during which Fields admitted knowing the statement was false.

The grand jury charged Fields with violating 18 U.S.C. § 1503 (1986). That statute punishes one who "corruptly ... endeavors to influence, obstruct, or impede, the due administration of justice...." **

The primary issue on appeal is whether sufficient evidence supports the district court's conclusion that Fields endeavored to obstruct justice.

## DISCUSSION

To resolve the primary issue in this case, we must interpret our holdings in *United States v. Silverman*, 745 F.2d 1386 (11th Cir.1984) and *United States v. Brand*, 775 F.2d 1460 (11th Cir.1985). Specifically, the issue is: does one "endeavor to obstruct justice" by obtaining or giving a false statement with the intent that it be used in a judicial proceeding when the statement is never used in a judicial proceeding and never given or caused to be given to a

prosecutor or other officer of the court? The government, citing *Silverman*, answers in the affirmative. Fields, citing *Brand* and attempting to distinguish *Silverman*, answers in the negative.

To determine what evidence is relevant to this inquiry, we must first identify the statutory meaning of the word "endeavor." In 1984, this court defined "endeavor" as used in 18 U.S.C. § 1503, stating "all the government has to establish is that the defendant should have reasonably foreseen that the natural and probable consequence of the success of his scheme would [obstruct the due administration of justice]." *United States v. Silverman*, 745 F.2d 1386, 1393 (11th Cir.1984) (citations omitted). The district court apparently relied upon the *Silverman* definition in concluding that Fields endeavored to obstruct justice. The district court said:

> The Court finds that Fields did endeavor to obstruct justice and further finds that Fields should have foreseen that the due administration of justice would have been obstructed if his plan for using Wilhite's false statement was successful, and that the obstruction of the administration of justice was a *natural and probable consequence*, even if the statement was not successfully used to aid Fields' defense. [Emphasis added.]

Reduced to its simplest terms, Fields's contention is that *Silverman* is distinguishable. In *Silverman*, a criminal defense attorney told his client that if the client paid the attorney $25,000, the money would be used to pay "powerful and dangerous people" who could assure that if the client pleaded guilty, he would receive a sentence

** The full text of 18 U.S.C. § 1503 reads as follows:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment as-
>
> sented to by him, or on account of his being or having been such a juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

of probation rather than imprisonment. *Silverman*, at 1390–91.

Fields argues that when a lawyer such as Silverman tells his client that the client will receive probation upon payment of a $25,000 bribe, but will receive thirteen years imprisonment if no payment is made, then it is foreseeable to the lawyer that the natural and probable consequence of his statements will be to obstruct justice. The client, Fields argues, is likely to plead guilty and then to commit perjury during the Federal Rule of Criminal Procedure 11 inquiry into whether the plea was being made in the absence of any promises apart from those contained in the plea agreement. Even if the client discloses his lawyer's behavior and obtains a new lawyer, the client's faith in the judicial system may be so shaken as to prevent the client from making a sensible judgment about whether to plead guilty. *Silverman*, 745 F.2d at 1394–95. According to Fields, "endeavor" means that the obstruction of justice effect must be more than merely foreseeable; it also requires that the obstruction be the natural and probable consequence of a defendant's act.

The *Silverman* case, Fields argues, clearly met this standard because whatever course of action Silverman's client took would inevitably result in an obstruction of justice. Although proof of an inevitable obstruction of justice is not required, the *Silverman* opinion takes pains to demonstrate the level of probability which must be demonstrated in order to prove that a given act constitutes an endeavor to obstruct justice.

Fields further argues that although Fields and Wilhite have been characterized as friends, Fields was in a far less influential position than was the lawyer in the *Silverman* case. For example, it is not certain that had Wilhite gone to trial on the firearms violation he would have continued to exculpate Fields. Had Wilhite gone to trial and told the truth about Fields's participation in the sale of the shotgun, it is not clear that Fields would have attempted to impeach Wilhite with the prior sworn statement because Fields had a valid en-

trapment defense. In fact, Fields argues, the entrapment defense won him an acquittal on the firearms charges. The probability that his act would result in an obstruction of justice was much lower than the probability demonstrated in *Silverman*. Fields also argues that it is important that he did not cause Wilhite's false sworn statement to be delivered to the Assistant United States Attorney (AUSA) or to be produced in court.

We reject Fields's attempt to distinguish *Silverman* based on the facts of this case. Although the probability of obstruction may be slightly less in this case than in *Silverman*, the district court's ruling is not wrong as a matter of law or clearly erroneous.

As to *Brand*, Fields contends that we held that when a party obtains, or attempts to obtain, false statements from witnesses tending to exculpate, but does not cause those statements to be delivered to the prosecutor or produced in court, then the non-delivery and non-production of those statements constitutes strong evidence that the accused did not endeavor to obstruct justice.

In *Brand*, the defendant sold a pickup truck to a customer. The odometer on the pickup had been rolled-back by 40,000 miles. The bill of sale expressly stated that the odometer mileage was not guaranteed. An odometer statement mailed to the purchaser had not been checked in the space provided on the form to indicate the mileage on the vehicle was accurate. The defendant was charged with mail fraud in connection with the odometer roll-back. The defendant told the AUSA that the purchaser knew the odometer had been rolled back. The AUSA informed the defendant that if the defendant obtained an affidavit to that effect, then the charges would be reduced or dismissed. The defendant presented to the purchaser a statement which said that the purchaser knew the odometer had been rolled back. The purchaser refused to sign it on the grounds that it was not true. Based on their presentation of the statement to the purchaser, the defendants were convicted of endeavoring to obstruct justice in violation of

18 U.S.C. § 1503. This court reversed. The court stated that allowing the convictions to stand would result in a flood of prosecutions of lawyers and investigators who happened to obtain false statements from witnesses but who never submitted those statements to a prosecutor or a court. In *Brand* we stated:

At the outset we consider this case a dangerous precedent if the convictions are upheld. It is common practice for attorneys, investigators, insurance adjusters, and law enforcement agents, both state and federal, to attempt to obtain signed statements of witnesses in criminal and civil cases. If they are to be confronted (as they frequently are), with charges of persons claiming that a statement was false, thus resulting in an obstruction of justice charge even though the statement was never submitted to a prosecutor or to the court, a new wave of cases will be filed by federal or state authorities.

*Brand,* 775 F.2d at 1468. We reversed the convictions. Fields argues that in *Brand* we reversed in part because the defendants did not cause the submission of a false statement to the prosecutor or to the court. Fields argues that likewise in this case we must reverse because Fields did not cause Wilhite's false statement to be submitted to the prosecutor or to the court. Although Wilhite's false sworn statement eventually found its way into the prosecutor's hands, it was Wilhite's lawyer, not Fields, that submitted the statement to the prosecutor. The *Brand* case makes this a factor probative of the absence of any endeavor to obstruct justice.

The above-quoted language supports Fields's argument. Significantly, however, the *Brand* case makes no analysis whatsoever of the significance of the defendant's failure to submit the false statement to the prosecutor or to the court. Instead, *Brand* places most of its analysis on the fact that no false statement was ever obtained, and even if a false statement had been obtained, it was not clear that the defendant would have known the statement to be false. In this case, Fields obtained the statement, obtained it under oath, in response to questioning by a lawyer, know-

ing it to be false. Furthermore, the obvious purpose of the statement was either to impeach Wilhite if he changed his story and decided to inculpate Fields at trial, or if Wilhite did not testify, to offer the statement as a prior statement made under oath by a declarant not available to testify at trial.

The majority of the *Brand* analysis relies upon the non-existence of a false statement, and not upon the fact that a false statement was never submitted to the prosecutor or to the court. Indeed, the organization of the *Brand* opinion strongly suggests that the significance we placed on the non-submission of the statement to the prosecutor or to the court is merely a way of emphasizing the impossibility of obstructing justice with a false statement when no false statement exists. In this case, the false statement did exist, and its existence in combination with the circumstances of its existence made it far more likely that the statement would have been produced in court and that justice would be obstructed in this case than in *Brand.* We hold that a false statement need not be actually used in court or delivered to a court officer to satisfy the "endeavor" element in the obstruction of justice statute. *Brand* does not hold to the contrary.

We note, in addition, that the existence of the false statement materially altered the government's treatment of Wilhite. Its existence frustrated the intent of the grand jury and the prosecutor.

We have considered the issues regarding outrageous conduct, exclusion of testimony, and use of intercepted conversations and find them to be meritless. Accordingly, the conviction and judgment are affirmed.

AFFIRMED

VANCE, Circuit Judge, dissenting:

The decision of the majority correctly states the issue to be "does one 'endeavor to obstruct justice' by obtaining or giving a false statement with the intent that it be used in a judicial proceeding when the statement is never used in a judicial proceeding and never given or caused to be given to a prosecutor or other officer of the

court?" Because I believe one does not endeavor to obstruct justice by simply obtaining a false statement but never submitting the statement to the prosecutor or the court, I dissent.

\ Fields simply solicited and obtained a false exculpatory statement from Wilhite. The statement was made to Fields' attorney, but was never presented to the prosecutor nor used in a judicial proceeding. In its application of *United States v. Brand,* 775 F.2d 1460 (11th Cir.1985), the majority improperly focuses on the fact that in this case a false statement was obtained. The *Brand* court, however, was wary of establishing a precedent allowing obstruction of justice charges whenever attorneys and other investigators obtain a false statement from a witness in the course of a regular investigation. Congress has not manifested an intent to extend section 1503 to all instances where counsel obtains a false statement from a witness. Absent clear congressional intent, section 1503 must be strictly construed.

I would reverse the conviction.