UNITED STATES of America, Plaintiff–Appellee,

v.

Antonio Lavere THOMAS, Defendant–Appellant.

No. 89–8477.

United States Court of Appeals, Eleventh Circuit.

Nov. 6, 1990.

George O. Lawson, Jr., Atlanta, Ga., Howard Moore, Moore & Moore, Oakland, Cal., for defendant-appellant.

Wilmer Parker, III, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before KRAVITCH and ANDERSON, Circuit Judges, and GODBOLD, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Antonio Thomas, an attorney, appeals his conviction on one count of endeavoring to obstruct justice in violation of 18 U.S.C. § 1503 by testifying falsely in a federal civil proceeding with knowledge of a pending grand jury investigation. The government concedes that a new trial is warranted because the trial court failed to charge the jury that the alleged false testimony had the effect of obstructing justice.

Thomas contends that the government is barred from retrying him on this count because there was insufficient evidence that his allegedly false testimony had such an effect. We hold that the trial court must instruct a jury that the government must prove the alleged statements had the natural and probable effect of obstructing justice. We reverse, however, because we conclude that the evidence was insufficient to support a conviction.

## FACTS

Thomas was one of the many fish caught in the broad net the government cast over a narcotics trafficking enterprise that was managed and controlled by Rolland Callahan, Jr.[1] The ninety-nine page, thirty-seven count indictment charged Callahan and sixteen other individuals with various offenses relating to the operation of the narcotics conspiracy and the concealment of its activities. Thomas, one of Callahan's attorneys, and Richard Rose, one of Callahan's accountants, were tried together on various counts relating to allegations that they assisted Callahan's narcotics enterprise in concealing, investing, and laundering drug proceeds. Following a jury trial, Rose was acquitted of all twenty of the counts with which he was charged. Thomas was acquitted of seventeen of the eighteen counts with which he was charged, including various counts of racketeering, conspiracy to possess with the intent to distribute drugs, conspiracy to defraud the United States, mail fraud, and money laundering. The sole count on which Thomas was convicted, obstruction of justice in violation of 18 U.S.C. § 1503, is the subject of this appeal.

Because we are reviewing Thomas's conviction for sufficiency of the evidence, we present the facts in the light most favorable to the government. The section of the indictment relating to the obstruction of justice count alleged that Thomas

knowing there was a Federal Grand Jury investigating ROLLAND CALLAHAN, JR., [did] corruptly endeavor to influence, obstruct, and impede the due administration of justice by willfully, knowingly, intentionally, and falsely testify [sic] under oath in the civil trial of the *State of Georgia v. Six Hundred Forty Thousand, Seven Hundred and Sixty-Eight Dollars in U.S. Currency*, Case No. C85–1700A, then pending in the United States District Court, Northern District of Georgia, before the Honorable Horace T. Ward, United States District Judge.

The alleged false testimony which provided the entire basis for the obstruction of justice count was the following exchange before Judge Ward:

ROBERT WILSON [Attorney for Dekalb County]: Do you know the intervenor in this case, Mr. Rolland Callahan?

THOMAS: I know Rolland Callahan, yes.

WILSON: Have you ever known him by any other name other [sic] than Rolland Callahan?

THOMAS: No, I have not.

WILSON: Have you ever known him by the name of Robert Johnson?

THOMAS: No, I have not.

WILSON: Have you ever introduced him to anyone as Robert Johnson?

THOMAS: Not that I recall.

In an effort to prove that Thomas's testimony constituted the obstruction of justice, the government introduced evidence attacking the truthfulness and accuracy of Thomas's assertions. The evidence revealed that Callahan had used the name of his wife's ten year old son, Robert Johnson, in negotiating a shopping center construction contract with Weyman Bearden, a builder. Subsequently, Callahan had entered into another contract with Bearden for the construction of a new home. Callahan brought the contract he negotiated with Bearden for the home to Thomas, and informed Thomas that he wanted the home to be in the name of Robert Johnson. In a meeting at Thomas's office where the con-

---

1. Pursuant to a negotiated agreement, Callahan pled guilty to RICO conspiracy, engaging in a continuing criminal enterprise, mail fraud, conspiracy to defraud the United States, subscribing to a false tax return, and transporting currency in contravention of the applicable reporting requirements.

tract was signed by Thomas as the attorney for Robert Johnson, Bearden referred to Callahan and his wife as Mr. and Mrs. Johnson. Bearden testified that, based upon his prior transaction with Callahan, he believed Callahan to be Robert Johnson. Thomas, although present when Bearden referred to Callahan as Robert Johnson, made no effort to inform Bearden of Callahan's true identity.

The government presented no evidence, however, that Thomas introduced Callahan to Bearden as Robert Johnson or at any other time represented Callahan to be Robert Johnson. In fact, the government's prime witness, Rolland Callahan, testified that Thomas never introduced him to anyone by any name other than "Mr. Callahan or Cal." Additionally, Callahan testified that he had not informed Thomas that he was representing himself to Bearden as Robert Johnson.[2] Callahan's wife, Jamie Willis Callahan, also testified for the government and stated that she had not told Thomas that she and her husband were holding themselves out as Mr. and Mrs. Robert Johnson.

The district court charged the jury that they could find Thomas guilty of the obstruction count if the government proved the following facts beyond a reasonable doubt:

First, that the federal grand jury and the federal district court were conducting

proceedings [relating to Callahan]; second, that the defendant endeavored to influence, intimidate or impede such proceedings; and, third, that the defendant's acts were done knowingly and corruptly.

The court followed this instruction by stating that "it is not necessary for the government to prove that any grand juror or trial judge was in fact swayed or changed or prevented in any way from administering justice, only that the defendant corruptly attempted to do so." Thomas's appeal follows from his conviction on this count of obstructing justice.

## DISCUSSION

The defendant was prosecuted under the omnibus clause of the obstruction of justice statute.[3] This clause subjects to criminal liability any individual who "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice." 18 U.S.C. § 1503. The omnibus clause is broad enough to encompass "any act committed corruptly, in an endeavor to impede or obstruct justice." *Brand,* 775 F.2d at 1465; *see United States v. Silverman,* 745 F.2d 1386, 1393 (11th Cir.1984); *United States v. Griffin,* 589 F.2d 200, 203 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32

2. Callahan's testimony on this point is particularly significant.

> GEORGE LAWSON [Thomas's attorney]: So, at the time you all sat down and Mr. Thomas was looking at this document for whomever, there was no formal introduction at that meeting as to who you were or who you were not, was there?
> CALLAHAN: No; no. No, Mr. Bearden already—you know, had already known that I was Robert Johnson as far as he knew....
> LAWSON: But Mr. Thomas did not know that you had represented yourself to Wayman [sic] Bearden as Robert Johnson, did he?
> CALLAHAN: I didn't go out and say, Antonio, I'm representing myself as Robert Johnson. I told Antonio, I said, "It's in Robert's name." He knew I had a son that was Robert Johnson. And I said, "It's in Robert's name. I want to put the house in Robert's name."
> LAWSON: My question, sir, was: Mr. Thomas had no personal knowledge that you had rep-

resented yourself to Mr. Bearden as Robert Johnson, yes or no?
> CALLAHAN: It's kind of a hard question to answer yes or no. No, from—I'm assuming he didn't know, no, but I don't know what he knew.
> LAWSON: Well, you did not hear in Mr. Thomas' presence him introduce you to Mr. Bearden—
> CALLAHAN: No, he never introduced me to Mr. Bearden as Robert Johnson.

3. The main body of the obstruction of justice *statute specifically targets conduct that inter-feres* with the duties of a juror or court officer. The omnibus clause is essentially a catch-all provision which generally prohibits conduct that interferes with the due administration of justice. *See United States v. Brand,* 775 F.2d 1460, 1464–65 (11th Cir.1985); 18 U.S.C. § 1503.

(1979).[4]

In order to convict an individual under the omnibus clause, the government must prove that he (1) corruptly or by threats, (2) endeavored, (3) to influence, obstruct, or impede the due administration of justice. *Brand,* 775 F.2d at 1465; *United States v. Perkins,* 748 F.2d 1519, 1528 (11th Cir.1984); *Silverman,* 745 F.2d at 1392. "Corruptly" describes the specific intent of the crime and can vary in meaning with the context of the section 1503 prosecution. *Brand,* 775 F.2d at 1465. Generally, the government must show that the defendant knowingly and intentionally undertook an action from which an obstruction of justice was a reasonably foreseeable result. *Silverman,* 745 F.2d at 1393. Although the government is not required to prove that the defendant had the specific purpose of obstructing justice, *Silverman,* 745 F.2d at 1393, it must establish that the conduct was prompted, at least in part, by a "corrupt motive." *Brand,* 775 F.2d at 1465; *United States v. Howard,* 569 F.2d 1331, 1336 n. 9 (5th Cir.), *cert. denied,* 439 U.S. 834, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978).

The "endeavor" element of the offense describes any attempt or effort to obstruct justice. *See Brand,* 775 F.2d at 1465. It is not necessary that an individual succeed in actually obstructing justice to violate section 1503. *Osborn v. United States,* 385 U.S. 323, 333, 87 S.Ct. 429, 434–35, 17 L.Ed.2d 394 (1966); *see United States v. Fields,* 838 F.2d 1571, 1575 (11th

Cir.1988). As the Eleventh Circuit noted in *Silverman,* "a section 1503 offense is complete when one corruptly *endeavors* to obstruct or impede the due administration of justice; the prosecution need not prove that the due administration of justice was actually obstructed or impeded." 745 F.2d at 1395 (emphasis original).

The final element of a section 1503 violation describes the characteristics of the conduct prohibited by the statute. Under the omnibus clause, an individual is prohibited from engaging in any activity constituting an effort to influence, obstruct, or impede the due administration of justice. The action taken by the defendant does not need to directly and immediately obstruct justice to be prohibited by section 1503. The defendant's conduct must be such, however, that its natural and probable effect would be the interference with the due administration of justice. *Fields,* 838 F.2d at 1573; *Silverman,* 745 F.2d at 1393; *see Brand,* 775 F.2d at 1465 (statute only proscribes conduct "which produces or *which is capable of producing an effect* that prevents justice from being duly administered") (emphasis original); *Perkins,* 748 F.2d at 1528–29 (false statement must be such that it could have "effect of impeding justice" to constitute violation of statute); *Griffin,* 589 F.2d at 204 (same); *Howard,* 569 F.2d at 1335 (statute only proscribes conduct which impedes justice or is capable of having the effect of impeding justice).[5]

---

**4.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981. Recently, in *United States v. Williams,* 874 F.2d 968, 980–82 (5th Cir.1989), the new Fifth Circuit reinterpreted *Griffin* to permit the affirmance of a § 1503 conviction without proof that the defendant's conduct had the actual effect of obstructing justice. Although we agree with much of what the new Fifth Circuit wrote in *Williams,* neither *Williams* nor its interpretation of *Griffin* is precedent in our circuit and, therefore, cannot displace the construction of *Griffin* given in former Fifth Circuit and Eleventh Circuit opinions. We also note that Chief Judge Tjoflat and Senior Judge Godbold, who joined Judge

Wisdom's opinion in *Griffin,* are both members of the Eleventh Circuit.

**5.** Various panels of the Eleventh Circuit have grafted the requirement that the defendant's conduct have the natural and probable effect of obstructing justice onto different elements of the § 1503 offense. *Compare Brand,* 775 F.2d at 1465 (discussing requirement in context of "endeavor" element); *with Perkins,* 748 F.2d at 1528–29 (discussing effect requirement as additional element of offense); *and with Silverman,* 745 F.2d at 1393 (discussing requirement in context of statute's intent element). Regardless of where these cases present the requirement of natural and probable effect in their analyses, they are in accord that it is a necessary part of the obstruction of justice offense.

■ The requirement that the government establish that the defendant's conduct has a probable effect of obstructing justice is particularly critical in section 1503 prosecutions premised on false testimony. We have held consistently that false testimony can provide the basis for a conviction under section 1503. *Perkins*, 748 F.2d at 1527–28; *Griffin*, 589 F.2d at 203–05; *see, e.g., Fields*, 838 F.2d at 1575 (affirming section 1503 conviction based on obtaining false statement with the intent that it be used in a judicial proceeding). In doing so, however, we have heeded the Supreme Court's admonition that not all false or evasive testimony constitutes obstruction of justice. *See In re Michael*, 326 U.S. 224, 227–28, 66 S.Ct. 78, 79–80, 90 L.Ed. 30 (1945); *Ex parte Hudgings*, 249 U.S. 378, 383–84, 39 S.Ct. 337, 339–40, 63 L.Ed. 656 (1919); *see also Griffin*, 589 F.2d at 205 ("[P]erjury alone does not have a necessarily inherent obstructive effect on the administration of justice."). Proof of perjury alone is, therefore, insufficient to sustain a section 1503 violation. *Perkins*, 748 F.2d at 1528; *Griffin*, 589 F.2d at 205.

■ To show an obstruction of justice based on false testimony, the government must establish a nexus between the false statements and the obstruction of the administration of justice. *See In re Michael*, 326 U.S. at 228, 66 S.Ct. at 80; *Ex parte Hudgings*, 249 U.S. at 383, 39 S.Ct. at 337; *Perkins*, 748 F.2d at 1528; *Griffin*, 589 F.2d at 205. Although, as in any section 1503 prosecution, the government need not show that the false statements actually obstructed justice, it is incumbent on the government to prove that the statements had the natural and probable effect of impeding justice. *See Fields*, 838 F.2d at 1573; *Silverman*, 745 F.2d at 1393. We agree with the parties that some language in *Perkins* and *Griffin* suggests that the government must prove actual obstruction as opposed to a probable effect of obstructing justice. *See Perkins*, 748 F.2d at 1528 ("[G]overment must prove that the statements had the effect of impeding justice."); *Griffin*, 589 F.2d at 204 ("[G]overnment must ... prove at trial that the [false or evasive] testimony had the effect of impeding justice."). However, we reject this interpretation of the cases. The emphasis in *Perkins* and *Griffin* on proving an "effect of impeding justice" must be construed in conjunction with the statutory language and prior precedent indicating that an attempt to obstruct justice completes the section 1503 offense. *Perkins* and *Griffin* emphasize the requirement of proving an effect of impeding justice in the false testimony context because obstruction of justice is not inherent in all false testimony. In *Williams*, the new Fifth Circuit construed *Griffin* in accordance with this reasoning, noting that a contrary interpretation was "out of harmony with the overall thrust of [*Griffin* and] ... inconsistent with section 1503 and our interpretation of it in *Griffin*." 874 F.2d at 980–81. We adopt this interpretation of *Griffin* and similarly construe *Perkins*, which largely followed and applied *Griffin*.[6]

■ Because proof that the false testimony was of the kind having a probable effect of obstructing justice is critical in distinguishing a section 1503 offense from mere perjury, the trial court must clearly and explicitly instruct the jury of the necessity of finding this relationship between statements and obstruction. *See Perkins*, 748 F.2d at 1529. Here, the trial court's instructions were inadequate to convey to the jury the necessity of finding that the alleged false testimony had a natural and probable effect of obstructing justice. We need not decide today whether such an instruction is necessary in all section 1503 prosecutions. In the context of false testimony, however, we hold that the trial court

6. We reject *Williams*, however, to the extent that it deemphasizes the necessity of proving that the false testimony at issue had a natural and probable effect of impeding justice. Both *Griffin* and *Perkins* explicitly require that the false testimony could have the "effect of impeding justice" to support a § 1503 conviction, and we are bound by this precedent unless overruled by the Eleventh Circuit en banc or the United States Supreme Court. *Garay v. Carnival Cruise Line*, 904 F.2d 1527, 1534 n. 10 (11th Cir.1990); *United States v. Machado*, 804 F.2d 1537, 1543 (11th Cir.1986).

must instruct the jury that false testimony alone will not provide the basis for a section 1503 conviction unless the testimony at issue had the natural and probable effect of impeding the due administration of justice.

Thomas failed to request or object to the absence of this instruction at trial. Therefore, we will not reverse his conviction on this ground unless we find that the failure to provide the jury with this instruction was plain error. *United States v. Perez–Garcia*, 904 F.2d 1534, 1542 (11th Cir.1990); *United States v. Langston*, 903 F.2d 1510, 1512 n. 5 (11th Cir.1990). We decline to address this issue, however, because we find that the government failed to put forward sufficient evidence that Thomas's alleged false testimony had the natural and probable effect of obstructing justice to sustain his conviction. Thomas argued, and the government agreed, that a showing of actual effect was required. As we have explained supra, however, only a natural and probable effect must be shown, and the government failed to meet even this standard.

■■■■ In reviewing a conviction for sufficiency of the evidence this court must consider the evidence in the light most favorable to the government and determine whether the jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Hernandez*, 896 F.2d 513, 517 (11th Cir.1990); *United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir.1989) (per curiam). It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. *Hernandez*, 896 F.2d at 517, *Poole*, 878 F.2d at 1391; *Brand*, 775 F.2d at 1466; *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc),[7] *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638

(1983). A conviction must be reversed, however, if a reasonable jury must necessarily entertain a reasonable doubt as to the defendant's guilt. *Hernandez*, 896 F.2d at 517; *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir.1983); *United States v. Marx*, 635 F.2d 436, 438 (5th Cir. Unit B Jan. 1981).

■■ After carefully reviewing the record, we are persuaded that the facts as proven by the government are insufficient to support the jury verdict. As a threshold matter, we are not even convinced that the government established that Thomas's testimony was false. *Cf. Brand*, 775 F.2d at 1468 (questioning whether government established that statement used as basis for section 1503 prosecution was in fact false). Thomas truthfully testified before Judge Ward that he knew Callahan. Thomas also testified that he had never known Callahan by the name of Robert Johnson or any other name. Although the government introduced evidence from which a jury could reasonably infer that Thomas knew that *other* individuals knew Callahan by the name of Robert Johnson, no evidence was introduced that Thomas himself knew or referred to Callahan by the name Robert Johnson. There is no evidence that Thomas ever introduced Callahan by the name of Robert Johnson or that he ever referred to Callahan by any name other than Callahan, Cal, or Rolland.[8]

The weakness in the government's case becomes strikingly evident upon reviewing the portion of Thomas's cross examination during the trial below when the prosecutor tried to establish the basis for Thomas's false testimony by stating "You indicated in front of Judge Ward that you had never known Rolland Callahan to go by any other name?" Had Thomas, in fact made such a statement to Judge Ward, we could find that the government presented sufficient

---

7. The Eleventh Circuit in *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), adopted as precedent decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981.

8. We find Thomas's testimony that he did not know Callahan by any name other than Rolland Callahan consistent with evidence that he occasionally referred to Callahan as "Cal" or "Rol-

land." In the context of Thomas's cross examination, we believe that no juror could reasonably treat Thomas's references to Callahan by his first name or an abbreviated form of his last name as inconsistent with his testimony denying knowledge of Callahan by any other name than his full name.

evidence to establish that the testimony was false. The transcript of Thomas's responses before Judge Ward, however, indicates that he was never asked such a question by the government. Thomas was asked whether he knew Callahan by any other name, not whether he knew that Callahan went by any other name. The distinction between the two questions is critical because only the second clearly asks Thomas whether he knew Callahan to have ever held himself out to *anyone* by any other name. The first question, and the one that Thomas was in fact asked, may reasonably be interpreted as asking whether Callahan had ever represented himself to *Thomas* by any other name. To infer from the vague question Thomas was asked that he falsely stated that he did not know Callahan to go by any other name "would require conjecture and innuendo, not a basis upon which this Court can rely to sustain a ... conviction." *United States v. Hardy*, 895 F.2d 1331, 1335 (11th Cir.1990); *see United States v. Palacios*, 556 F.2d 1359, 1365 (5th Cir.1977).

Moreover, even if we believed that a jury could reasonably find that Thomas testified falsely beyond a reasonable doubt, the government's case still fails because no evidence was introduced that the statements had a natural and probable effect of impeding justice. The government's proof at trial of the section 1503 violation was limited to evidence that Thomas knew that Callahan represented himself as Robert Johnson to other individuals. The prosecution did not introduce a shred of evidence from which the jury could infer that the allegedly false testimony before Judge Ward had the potential of obstructing justice. Nor did the government put forward any evidence to show that Thomas's statements had the natural and probable tendency of impeding the grand jury's investigation of Callahan or Judge Ward's civil forfeiture trial relating to Callahan's property. *See, e.g., Brand*, 775 F.2d at 1468–70 (conviction reversed on insufficient evidence where government failed to show how false statement had tendency to obstruct justice). *Cf. Fields*, 838 F.2d at 1575 (false statement materially altered government's

treatment of codefendant); *Perkins*, 748 F.2d at 1528–29 (government produced evidence that false testimony resulted in delay of investigation for over a year); *Silverman*, 745 F.2d at 1393–95 (foreseeable result of defendant's conduct was that justice would be obstructed); *Griffin*, 589 F.2d at 205 (false testimony had effect of closing off avenues of grand jury inquiry).

On appeal, the government now contends that Thomas's allegedly false testimony had the potential of obstructing justice in three ways. First, the "false" testimony hindered the State of Georgia's ability to prove, in the civil forfeiture trial, that Callahan's income was derived from large scale drug dealing. As a result, the government argues, the State of Georgia did not receive a favorable ruling from Judge Ward. Second, "truthful testimony would have led to an expeditious ruling by Judge Ward who otherwise delayed a ruling for a number of months due to the paucity of evidence for the State." Brief for Appellee at 25. Finally, the government argues that Thomas's testimony delayed the grand jury's return of an indictment against Callahan and his associates.

The government's conclusory, highly speculative, and inherently implausible assertions of the statements' tendency to obstruct justice are inadequate to sustain Thomas's conviction. *Cf. Hardy*, 895 F.2d at 1335 (government must do more than prove that defendant's participation in offense was "possible or even plausible" to sustain conviction). The government does not explain, nor can we conceive a reasonable explanation of, how Thomas's knowledge of Callahan's use of other names had any significant relationship to Georgia's ability to prove the source of Callahan's income. Likewise, we fail to apprehend how Thomas's testimony could have any meaningful impact on the alacrity with which Judge Ward and the grand jury completed their reviews. In any event, because the government presented the jury with no evidence to support any of these assertions, we cannot rely on these claims to support Thomas's conviction.

## CONCLUSION

Because we find insufficient evidence to sustain Thomas's conviction for obstruction of justice, his conviction is REVERSED.