**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Samuel BANKS, Defendant–Appellant.**

No. 90–7578.

United States Court of Appeals,
Eleventh Circuit.

Sept. 30, 1991.

John A. Lentine, Sheffield, Sheffield & Sheffield, P.C., Birmingham, Ala., for defendant-appellant.

Frank W. Donaldson, U.S. Atty., Harwell G. Davis, III, and Adolph J. Dean, Jr., Asst. U.S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before BIRCH, Circuit Judge, DYER, Senior Circuit Judge, FULLAM*, Senior District Judge.

FULLAM, Senior District Judge:

Appellant stands convicted of obstruction of justice, 18 U.S.C. § 1503. His appeal questions the sufficiency of the evidence, the adequacy of the court's charge to the jury, and the manner in which the sentencing guidelines were calculated and applied in determining his sentence.

The facts may be briefly summarized: In October 1987, appellant entered a plea of guilty in an Alabama state court to a charge of trafficking in marijuana, after he attempted to sell 20 pounds of that substance to an undercover agent. At his sentencing hearing in December 1987, appellant testified under oath that he had obtained the marijuana from one Curtis Motley. Appellant was sentenced to a term of 20 years.

Two years later, after a lengthy investigation into drug-related activities in the northern Alabama area, federal prosecutors sought to obtain an indictment against Curtis Motley, whom they suspected of being a leader of a large-scale drug organization. Appellant was interviewed by an assistant U.S. attorney, and was called as a witness before the grand jury, but refused to provide any information, on the stated ground that to do so would endanger his own life and the lives of members of his family.

Eventually, in February 1990, appellant was granted use-immunity and was ordered to testify before the grand jury. He continued to refuse, and was prosecuted and sentenced for civil contempt of court. While serving his contempt sentence, appellant was indicted in this case, for obstructing justice in violation of 18 U.S.C. § 1503. He was convicted after a two-day jury trial, and was sentenced to a term of 34 months, consecutive to his 20–year state sentence and an unrelated 5–year federal sentence. This appeal followed.

I.

■ The first issue to be considered is whether appellant's motion for judgment of acquittal should have been granted. The statute authorizes conviction of any person who

"... corruptly or by threats or force or by any threatening letter or communica-

---

\* Honorable John P. Fullam, Senior U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

tion endeavors to influence, intimidate or impede any grand or petit juror or officer of any court of the United States ... or corruptly or by threats or force or by any threatening letter or communication influences, obstructs or impedes or endeavors to influence, obstruct or impede, the due administration of justice...."

There is no contention that appellant used force or threats; the issue is whether he can be said to have "corruptly" influenced, obstructed or impeded the due administration of justice, or endeavored to do so, merely by refusing to testify before the grand jury. If we were writing on a clean slate, it would be possible, applying an *ejusdem generis* analysis, to suppose that Congress intended the word "corruptly" merely to encompass bribery and related conduct. But it is at least equally reasonable to conclude that Congress intended to proscribe any intentional effort to impede the due administration of justice, regardless of the means employed, and that is the direction the law has taken, as established by the decisions of all courts which have considered the matter.

"The term 'corruptly' is the specific intent of the crime, and the term takes on different meanings in various contexts. *U.S. v. Brand*, 775 F.2d 1460, 1465 (11th Cir.1985); *accord, U.S. v. Thomas*, 916 F.2d 647, 651 (11th Cir. 1990). As stated by our predecessor.[1]

"The term 'corruptly' means for an improper motive, or 'an evil or wicked purpose'. Its use together with 'endeavor', charges an intentional act. It is interchangeable with the term 'willful'. *U.S. v. Haas*, 583 F.2d 216, 221 (5th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed.2d 240 (1979)."

It is clear that the knowing destruction or concealment of documentary evidence can constitute a violation of § 1503, *U.S. v. Rasheed*, 663 F.2d 843 (9th Cir.1981), *cert. denied*, 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982); *U.S. v. Walasek*, 527 F.2d 676, 680–81 (3d Cir.1975). As stated by the *Rasheed* court:

"The destruction or concealment of subpoenaed documents results in the improper suppression of evidence, and thus the influencing, obstructing and impeding of judicial proceedings, just as much as does the intimidation of a witness. That one act suppresses testimonial evidence, while the other act suppresses real evidence, is of no importance. 663 F.2d 843, 852. And although proof of perjury, standing alone, does not suffice to establish a violation of § 1503, false or evasive testimony which, as a natural and probable consequence, would have had the effect of impeding the administration of justice, can constitute a violation of § 1503. *U.S. v. Thomas, supra,* 916 F.2d at 652. *Accord, U.S. v. Cohn,* 452 F.2d 881 (2d Cir.1971), *cert. denied,* 405 U.S. 975, 92 S.Ct. 1196, 31 L.Ed.2d 249 (1972) (concealing information recorded in one's memory violates the statute, just as concealing information recorded in one's papers); *U.S. v. Langella,* 776 F.2d 1078, 1081 (2d Cir.1985), *cert. denied,* 475 U.S. 1019, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986) (defendant properly convicted for giving grand jury evasive answers which constituted concealment of evidence)."

In *U.S. v. Griffin,* 589 F.2d 200, 204 (5th Cir.1979), *cert. denied,* 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979), Judge Wisdom cogently observed:

"By falsely denying knowledge of events and individuals when questioned about them, [defendant] hindered the grand jury's attempts to gather evidence of [criminal] activities as effectively as if he refused to answer the questions at all." 589 F.2d at p. 204.

■ We thus have no difficulty in concluding that a person who, by refusing to testify before a grand jury, seeks to impede the proper functioning of the grand jury—the "due administration of justice"—by withholding pertinent information, may properly be convicted of violating § 1503. Since the evidence viewed in a light most favorable to the prosecution—as it must be

---

1. Decisions of the former Fifth Circuit rendered before October 1, 1981, are binding precedent in this circuit. *Bonner v. City of Pritchard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

when reviewing denial of a motion for judgment of acquittal—permitted a rational factfinder to find appellant guilty of doing just that, the motion for judgment of acquittal was properly denied.[2]

## II.

██ A more substantial issue presented by this appeal is whether a person who, in refusing to give testimony before a grand jury, is motivated solely by legitimate and well-founded fear for his own safety and that of members of his family, can be said to have "corruptly" endeavored to impede the due administration of justice. It is, of course, well-established that a person may properly be ordered to testify before a grand jury, notwithstanding his fears of reprisal, and may be prosecuted for contempt of court for disobeying such a court order. *U.S. v. Gomez*, 553 F.2d 958 (5th Cir.1977). *See, also, Piemonte v. U.S.*, 367 U.S. 556, 559 n. 2, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961); *In re Grand Jury Proceedings*, 509 F.2d 1349, 1350 (5th Cit. 1975); *Latona v. U.S.*, 449 F.2d 121, 122 (8th Cir.1971). But all that is required to sustain a contempt conviction is proof that the defendant was aware of the court's order, and knowingly refused to comply; his motive is irrelevant. To establish a violation of § 1503, on the other hand, the government must prove that the defendant acted "corruptly".

> "Although the government is not required to prove that the defendant had the specific purpose of obstructing justice, it must establish that the conduct was prompted, at least in part, by a 'corrupt motive'. *U.S. v. Thomas, supra*, 916 F.2d 647, 651. Moreover, it is the law of this circuit that any doubt as to the defendant's motive must be resolved in his favor. *U.S. v. Brand*, 775 F.2d 1460, 1465 (11th Cir.1985)."

We conclude, therefore, that a defendant charged with obstructing justice for refusing to testify may, within a narrow range of unusual and extreme circumstances, be entitled to acquittal upon proof that his refusal was based solely upon a realistic and reasonable perception that giving testimony would result in imminent harm to the safety of the witness or members of his family.

We recognize that many witnesses in criminal cases, both before grand juries and at trials, would prefer not to testify, and can articulate some basis for apprehension about the consequences of their testimony. Moreover, law-enforcement efforts are largely dependent upon the ability of prosecutors to extract relevant testimony from persons involved in criminal activities, most of whom could probably articulate a plausible basis for fear of reprisals. Our holding today does not provide sanctuary for any such witnesses. In the first place, it is unlikely that any significant number of such reluctant witnesses would be able to convince a jury that their fears were genuine and substantiated, and that their sole motive in refusing to testify was that fear. Moreover, grants of immunity, coupled with the contempt sanction, will presumably continue to be the principal weapons in prosecutors' arsenals.

██ In the present case, by way of contrast, there was evidence that appellant was in a vulnerable position, since he was serving time in prison; that appellant was aware of instances in which "snitches" had been murdered in that same prison; that appellant's life had been directly threatened; and that during the period when appellant was being interviewed, urged to testify, called before the grand jury, and granted immunity, the home of a close family member was sprayed with machinegun fire. It would not have been unreasonable for a properly instructed jury to have concluded that appellant's fears were genuine and well-founded; that he would gladly have cooperated but for these fears for himself and his family; and that he did not act "corruptly" in refusing to testify.

The remaining, and decisive, question is whether these issues were properly submitted to the jury.

---

**2.** There is, of course, no substance to appellant's double-jeopardy argument on the basis of the contempt proceedings. It is clear that those were civil proceedings, not criminal.

## III.

In the course of the charge-conference, appellant's trial counsel discussed the "fear of reprisal" defense, but the court ruled that, just as fear of reprisal would not be a defense against a contempt charge under 18 U.S.C. § 6002, it would not constitute justification under § 1503. The court stated that the defendant's alleged fear could be argued to the jury on the issue of motive, but that the jury would be instructed that fear was not a justification for refusing to testify.

█ The only instruction to the jury given by the court on this subject was as follows:

"Further, you are instructed that fear for one's own safety or indeed, the safety of his family, does not provide lawful justification for a person to refuse to testify at a Grand Jury proceeding after he has been granted Use Immunity of the nature granted by the order of Judge U.W. Clemmon received in evidence as Government Exhibit No. 2."

The charge also included the following: "As I indicated, the indictment here charges Mr. Banks with a violation of Federal law. The defendant can be found guilty of the offense charged in this indictment only if all of the following four things are proven or established beyond a reasonable doubt. These four things.

"First, that the defendant had been called a witness before a Grand Jury impaneled in the United States District Court for the Northern District of Alabama as alleged; second, that the defendant refused without legal justification to answer under oath the question propounded to him before such Grand Jury as alleged; third, that by such refusal, the defendant obstructed, impeded or endeavored to obstruct or impede the due administration of justice; and four, that the defendant's acts were done knowingly, willfully and corruptly."

"To endeavor to obstruct or impede the due administration of justice means to take some action for the purpose of interfering with or preventing the enforcement of the law of the land sought to be brought before the court. However, it is not necessary for the government to prove the grand jury was, in fact, prevented in any way from its role in the enforcement of the law, only that the defendant corruptly attempted to do so . . .

"To act corruptly means to act knowingly and dishonestly with a specific intent to subvert or undermine the integrity of the Grand Jury proceedings."

Although each of these statements is a correct statement of the law, upon careful review of the charge as a whole, we are left with the firm impression that the charge was inadequate to permit the jury to give proper consideration to defendant's proffered defense to the charge. In the first place, to state that fear of reprisal cannot provide "lawful justification" for refusing to testify, without also explaining the (very limited, as discussed above) circumstances in which such fear could be a defense to the charge on trial was, in this context, tantamount to directing the jury to disregard to the defendant's evidence and contentions. We conclude it was plain error not to include some discussion of the relationship between fear of reprisal and motivation.

In the second place, the use of generalized statements of legal principles failed to convey to the jury the need for proof that the defendant knew or should have known that his failure to testify would be likely, as a natural and probable consequence, to deprive the grand jury of relevant information. It was the defendant's position at trial that he had given the prosecutors (and, through the availability of a transcript of his sentencing hearing testimony) the grand jury, all of the pertinent information within his knowledge. As a fallback position, it was appellant's contention that whatever information he might possess was equally available through other witnesses, and indeed was actually obtained from other witnesses. The jury was free to reject these contentions, of course, but the appellant was entitled to have the case submitted to the jury in a manner which

would enable the jury fairly to consider his proffered defenses.

We conclude that, in combination, these inadequacies and omissions deprived appellant of a fundamentally fair trial.

## IV.

Having concluded that appellant is entitled to a new trial, we find it unnecessary to address the sentencing issues. In the event appellant is retried and again convicted, we are confident that the sentencing judge will give careful consideration to the respective contentions of the parties as to whether, in fact, appellant's refusal to testify had a sufficiently substantial impact on the due administration of justice to warrant an increase in the base level of the offense.

## V.

For the reasons discussed above, the judgment appealed from is VACATED, and the case REMANDED for a new trial.