UNITED STATES of America,

v.

**Kenneth BARFIELD, Defendant.**

**Crim. No. 91–00181–B–C.**

United States District Court,
S.D. Alabama, S.D.

Dec. 30, 1991.

---

Deborah A. Griffin, Asst. U.S. Atty., Mobile, Ala., for plaintiff.

Thomas R. Boller, Mobile, Ala., for defendant.

## ORDER

BUTLER, District Judge.

■ Defendant Kenneth Wayne Barfield was convicted by jury verdict in this court, on October 23, 1991, of corruptly endeavoring to obstruct, impede, or influence the due administration of justice in violation of 18 U.S.C. § 1503. He has moved this court for a new trial, claiming that the evidence was insufficient to support a conviction. If the evidence was indeed insufficient as a matter of law, the court would enter a judgment of acquittal, not order a new trial. Therefore, the court treats this as a motion for a judgment of acquittal notwithstanding the jury verdict. *See* Fed. R.Crim.P. 29(c).

### Background

■ When considering a motion for a judgment of acquittal, the court construes the facts in the light most favorable to the government. *See, e.g., United States v. Brand*, 775 F.2d 1460, 1465 (11th Cir.1985). The defendant was a confidential informant working for the Drug Enforcement Administration ("DEA") in its investigation of Donald Flores, whom the defendant met while incarcerated in federal prison in Memphis, Tennessee. During the course of the investigation, defendant surreptitiously taped conversations he had with Flores. Based in large part on the evidence obtained by defendant against Flores, the government indicted Flores for possession, manufacture, and distribution of marijuana.

Following Flores's indictment, defendant contacted Flores's attorney, Wesley Blacksher. Defendant told Blacksher that he had information regarding Flores. A man later identified by Blacksher as the defendant dropped off a handdrawn map of the property on which Flores was growing marijuana, which ostensibly showed that the seizure of marijuana by the DEA was unreasonable because the search warrant did not allow the agents to search the property in question. Blacksher met defendant twice. At the second meeting, defendant, in an unsworn statement, told Blacksher that Flores was not involved and that he, defendant, could prove it. According to Blacksher, defendant also stated that the government was hiding evidence.

Shortly thereafter, Blacksher brought a court reporter to obtain a deposition from defendant. After initially rescheduling, the defendant agreed to give sworn testimony to Blacksher, a copy of which was introduced into evidence. According to the

government, defendant gave certain evasive or false answers[1] to questions regarding his and Flores's participation in growing marijuana in Conecuh County, Alabama.

During one of his conversations with Blacksher, the defendant told Blacksher about a letter that he, Barfield, had from a federal judge that described defendant as the least credible witness that the judge had ever seen.

The government contended that by his conduct, especially in giving statements to Blacksher that were inconsistent with the testimony that the government expected defendant to give at Flores's trial, the defendant intended to give Blacksher impeachment evidence that would be used to make defendant's testimony less credible; thus making Flores's conviction less likely,[2] thereby impeding the due administration of justice.[3] The government also contended that its inability to call defendant as a witness prevented it from introducing certain tape recordings of Flores and Barfield that only Barfield could authenticate. The government never called defendant as a witness in the Flores trial, nor did it contend that defendant was unwilling or refused to testify.

*Conclusions of Law*

**Elements of 18 U.S.C. § 1503**

■ In order to sustain a conviction, the government must prove beyond a reasonable doubt that the defendant corruptly endeavored to obstruct, impede, or influence the due administration of justice. 18 U.S.C. § 1503. A corrupt endeavor to obstruct justice is one that is reasonably likely to lead to the obstruction[4] of justice and that is motivated, at least in part, by a specific intent to obstruct justice. *See United States v. Thomas*, 916 F.2d 647, 651 (11th Cir.1990). Therefore, the court must determine whether defendant's actions could reasonably lead to the obstruction of justice[5] and whether they present sufficient circumstantial evidence to prove corrupt motive beyond a reasonable doubt. Certain evidence offered by the government is not relevant to sustain defendant's conviction. The court, therefore, will narrow the issues by distinguishing the irrelevant evidence.

**Defendant's Offering the Letter From the Federal Judge is not Relevant**

■ The defendant did not endeavor to obstruct justice when he offered to give Blacksher the letter from the federal judge, which described defendant as an incredible witness. Although the letter itself, as hearsay, probably could not have been used to impeach defendant, the defendant would have been equally impeachable had he given the letter to the United States Attorney. It is the letter that is damaging, not the act of giving it to Flores's defense counsel. Therefore, evidence that defendant gave the letter to Blacksher is irrelevant to support defendant's conviction.

**Government's Inability to Introduce Tapes is not Relevant**

■ The government contended that defendant's conduct had the propensity to obstruct justice because it had the effect of

---

1. The answers were false or evasive with respect to the information that the DEA agents had gotten from Barfield and from listening to the tapes that Barfield had made.

2. The government introduced some evidence one count of the indictment against Flores was dropped because of the government's inability to call Barfield. The court determined that this evidence, as well as the rebuttal evidence that defense would introduce, was irrelevant because the success of the endeavor is not an element of endeavoring to obstruct justice under § 1503.

3. The indictment alleges that Barfield violated § 1503 by giving impeachment evidence. It does not state how that would tend to obstruct, impede or influence the due administration of justice. Although the indictment may be deficient (the defendant never raised the issue), at this juncture, the court assumes that the alleged harm was the difficulty in successfully prosecuting Flores.

4. In the interest of simplicity, obstruction is used to denote impedance and influence as well.

5. For this aspect of defendant's motion, the court accepts the government's evidence as true. The analysis is purely legal as to whether those facts constitute an endeavor under § 1503.

preventing the government from introducing tape recordings that only Barfield could authenticate. This, however, assumes that defendant had as good an understanding of the rules of evidence as the United States Attorney. He would have had to know that giving inconsistent statements could be used for impeachment to make him less credible. Further, he would have had to know that the United States Attorney would not use his testimony at all as a result. Lastly, he would have had to know that all tape recordings must be authenticated before introduction and that he was the only person other than defendant who could authenticate them. The evidence was insufficient to show that defendant, a layman, must have known of or intended this consequence.

Even if the defendant did intend this result, his conduct was not reasonably likely to lead to it. The government could have called defendant solely for the purpose of authenticating the tapes. In that situation, the defendant's prior statements to Blacksher about his and Flores's involvement in the marijuana cultivation would not likely [6] have been admissible because he would not have testified about that on direct examination.[7] Even if the prior statements were admitted they would not have prevented Barfield's authentication of the tapes and therefore their admissibility, they would only have made Barfield look less credible. Therefore, the inability of the government to introduce the tapes was not a reasonably foreseeable consequence of defendant's conduct.

Defendant's Dropping Off of the Map is not Relevant

■ As part of its case in chief, the government offered credible evidence that defendant left a map with Blacksher.[8] The handdrawn map, introduced into evidence, showed the property on which the marijuana was grown and where the property lines were. It also included a note that claimed that the search of the property was warrantless and illegal. The prosecution offered no evidence as to how giving the map to Blacksher could reasonably lead to the obstruction of justice as it is required to do. *See Thomas*, 916 F.2d at 652. The act of giving the map to Blacksher is not relevant to support defendant's conviction because a reasonable juror could not conclude that giving the map might make defendant a less credible witness.[9]

The Note Accompanying the Map is Relevant

■ The note written on the map, however, is a statement made by the defendant, similar to the statements made orally, that could ostensibly be used as impeachment evidence. The map is relevant only as being a prior, possibly false, statement made by the defendant. Although relevant, the government did not specifically show how the note would have contradicted Barfield's expected testimony. Nonetheless, the court considers this evidence with the other statements made by Barfield to Blacksher.

Defendant's Giving Inconsistent Statements is Insufficient to Sustain a Conviction under § 1503

■ The only issue remaining is whether defendant's sworn and unsworn statements, made to Blacksher, that could have

---

6. Perhaps the contents of the tapes would have allowed Blacksher to bring up certain statements, but because the government never called Barfield, this is purely speculative.

7. At most the defense could have attempted to impeach Barfield by asking him if he had previously lied under oath. However, regardless of Barfield's answer, the defense could not have introduced any of Barfield's prior statements because specific instances of conduct introduced for impeachment may not be proved by extrinsic evidence. Fed.R.Evid. 608(b).

8. A reasonable juror could have disbelieved defendant's denial.

9. The indictment alleges that defendant endeavored to obstruct justice by giving Flores's attorney impeachment evidence that would used make defendant a less believable witness. The court need not determine whether defendant's actions could have obstructed justice in any other way. *See Thomas*, 916 F.2d at 652 (government must show how defendant's actions tended to obstruct justice).

been used to impeach defendant's testimony are sufficient to sustain a conviction under 18 U.S.C. § 1503. A reasonable finder of fact could determine that defendant's unsworn statement, that Flores was innocent and that defendant could prove it, was false. Defendant's sworn deposition testimony could be characterized as evasive or false.[10] In either case, it could have been used as prior inconsistent statement impeachment evidence if defendant were called as a substantive witness at the Flores trial.

Section 1503 of Title 18 of the United States Code has two clauses. The first clause proscribes specific acts such as threatening jurors or officers of the court. The second, omnibus, clause of § 1503 does not proscribe specific acts, but rather proscribes any act, committed with a corrupt motive, that could reasonably lead to the obstruction of the due administration of justice. Therefore, a brief review of conduct that has been alleged to violate the omnibus clause is helpful to determine whether defendant's conduct fell within the omnibus clause.

A refusal to testify before a grand jury can support a conviction under the omnibus clause because it would prevent the grand jury from performing its investigative function. *United States v. Banks*, 942 F.2d 1576 (11th Cir.1991). Falsely testifying before the grand jury is punishable under § 1503 if it has the effect of blocking off the flow of information to the grand jury. *United States v. Griffin*, 589 F.2d 200, 204 (5th Cir.), *cert. denied*, 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979). Perjury alone, however, is not sufficient to constitute obstruction of justice. *In Re Michael*, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30 (1945).[11] Perjured testimony may defeat the objective of trial, but not defeat

the judicial process.[12] The purpose of a trial is to sift the truth from the evidence presented. *Id.* at 227–28, 66 S.Ct. at 79–80. The false testimony must somehow infect the process to constitute obstruction.[13]

The false statements at issue here were not made before the grand jury or to any law enforcement official, but rather to a criminal defense attorney. The government did not allege that defendant's actions tended to obstruct justice by interfering with Flores's defense. Therefore, cases like *United States v. Silverman*, 745 F.2d 1386 (11th Cir.1984) (defendant, an attorney, induced his client to plead guilty by promising leniency if client paid defendant $25,000), and *United States v. Neiswender*, 590 F.2d 1269 (4th Cir.) (defendant promised attorney that case was fixed thereby inducing the attorney to work less zealously on the case), *cert. denied*, 441 U.S. 963, 99 S.Ct. 2410, 60 L.Ed.2d 1068 (1979), are inapposite. The court's inquiry is thus limited to how defendant's false statements affected him as a witness.

"The proscription against false statements grew out of the making of false statements to law enforcement officers, not to witnesses who have no direct effect on law enforcement or other government operation." *United States v. Brand*, 775 F.2d 1460, 1469 (11th Cir.1985) (citation omitted). If Barfield had actually testified at trial as the government expected and then made the statements he had previously made to Blacksher on cross examination, no obstruction of justice would have occurred. It would have been the province of the jury to determine what the truth was. *See Michael*, 326 U.S. at 227–28, 66 S.Ct. at 79–80; *Brand*, 775 F.2d at 1467. The government alleged no injury to the process, only that it would have been more difficult to convict Flores.

---

**10.** Only certain answers could be used for impeachment; the others were collateral.

**11.** The two examples of perjurious obstruction given in *Michael* were: a juror who falsely swears to impartiality so that he can serve and vote to acquit regardless of the evidence; and failure to answer before a grand jury, thereby blocking the grand jury's inquiry. *Id.* at 228–29, 66 S.Ct. at 80.

**12.** A grand jury inquiry, unlike a trial, is investigative. Thus, perjury can prevent the grand jury from performing its function.

**13.** *See United States v. Thomas*, 916 F.2d 647 (11th Cir.1990) (conviction overturned because the government failed to show how the defendant's false testimony obstructed justice).

There is no evidence that defendant refused to testify, only that the government chose not to use him because, in their opinion, his credibility was damaged. The choice of the government not to use someone is not tantamount to a constructive refusal by the witness to testify. Therefore, because the defendant was apparently otherwise willing to testify, and because defendant's statements, if made during Flores's trial, would not amount to obstruction of justice, the defendant did not, as a matter of law, endeavor to obstruct justice by giving statements to Blacksher that were inconsistent with his expected testimony.[14]

**The Prosecution Failed to Prove that Defendant Acted Corruptly**

 The government also failed to present sufficient evidence to prove beyond a reasonable doubt that defendant acted, at least in part, with a corrupt motive. Although circumstantial evidence can be sufficient to prove intent, *see, e.g., United States v. Smith,* 548 F.2d 545, 549–50 (5th Cir.), *cert. denied,* 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977), the evidence presented at trial suggested a number of possible motives.[15] The prosecution never showed that defendant stood to gain personally from his obstruction. *Cf. United States v. Fields,* 838 F.2d 1571 (11th Cir. 1988) (defendant attempted to obtain false statements from a witness in his own trial); *see also United States v. Popkin,* 943 F.2d 1535 (11th Cir.1991) ("corruptly", as used in obstruction of justice statutes, forbids "those acts done with the intent to secure an unlawful benefit"). "[I]f there is a fair doubt as to whether the defendant's conduct is embraced within the prohibition, the policy of lenity requires that the doubt be resolved in favor of the accused." *Brand,* 775 F.2d at 1465 (citing *Ladner v. United States,* 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); *United States v. Porter,* 591 F.2d 1048 (5th Cir.1979)).

### Conclusion

For the reasons stated above, the prosecution's evidence, even if accepted as true, is legally insufficient to support a conviction for corruptly endeavoring to obstruct or impede the due administration of justice in violation of 18 U.S.C. § 1503. Although the scope of the omnibus clause of § 1503 is broad, *see Thomas,* 916 F.2d at 650, it is not so broad as to cover simply the making of inconsistent statements.[16] Most witnesses, especially informants, make statements outside of court that are in some way inconsistent with their expected in court testimony. These inconsistencies alone are not a sufficient endeavor to obstruct justice to support a conviction under § 1503.[17]

The defendant's motion for a judgment of acquittal is GRANTED. Defendant's other motions are moot. An appropriate judgment will be entered in this case. It is so ORDERED.

---

**14.** Had Barfield testified at the Flores trial, it is unclear how much damage his inconsistent statements would have caused. As a paid informant with prior felony convictions, his credibility was low to begin with. When he testified in this case, Barfield gave explanations as to why he told Blacksher certain things in the deposition. Although the court does not necessarily believe those explanations, the United States Attorney could have elicited that testimony in the Flores trial on redirect, in an attempt to rehabilitate Barfield. Thus, the effect on the Flores trial of Barfield giving inconsistent statements, regardless of his motive, would probably have been minimal.

**15.** The evidence need not exclude all possibilities, only reasonable ones. *See Brand,* 775 F.2d at 1466. A reasonable juror could not conclude that all other explanations were excluded.

**16.** A broader reading of the omnibus clause could create a constitutional notice problem. Absent contrary congressional intent, courts should interpret statutes to avoid constitutional problems. *See Rust v. Sullivan,* — U.S. —, —, 111 S.Ct. 1759, 1788–89, 114 L.Ed.2d 233, 275 (1991) (O'Connor, J., dissenting) (discussing the Supreme Court's rule of statutory construction).

**17.** Although defendant made sworn statements to Flores's attorney, the prosecution's argument does not rely on that fact. Any inconsistent statement, made to anyone, could be used as impeachment evidence.